338 So.2d 627 (1976)
STATE of Louisiana, Appellee,
v.
Isaac LAWSON, Jr., Appellant.
No. 57730.
Supreme Court of Louisiana.
October 6, 1976.
Rehearing Denied November 5, 1976.
*628 John M. Lawrence, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Lawson was convicted of manslaughter, La.R.S. 14:31, and sentenced to fourteen years at hard labor. The conviction resulted from a second trial, since an earlier trial had been ended by a court-declared mistrial.
The principal contention on the present appeal is that the present re-trial constituted double jeopardy in violation of the defendant's constitutional rights. He argues that therefore the present conviction must be reversed and any (re)prosecution on the charge barred.
Context Facts
The defendant is charged with killing Evelyn Bass.
She was the common-law wife of Jefferson Barber. Barber had earlier slapped Lawson's common-law wife (Dorothy Robinson), following which the defendant Lawson came to Barber's home armed with a pistol.
The defendant Lawson shot Mrs. Bass when she shielded her husband with her body. She subsequently died. The chief *629 defense on the second (or present) trial[1] was to cast doubt on the veracity of Barber, the only eyewitness, on the basis of his prior convictions and of his perjury at the first trial in denying such convictions.[2]
The first trial ended when, after conference with the prosecutor and the defense attorney, the court declared a mistrial. The incident occurred during the state's direct examination of its rebuttal witness, Mrs. Dorothy Robinson, the common-law wife of the defendant. She was asked: "Are you aware that your husband is convicted of manslaughter?"
At this point, the defense counsel immediately objected: "Hold it. No. He's been admonished."[3] The witness never answered.
Legal Principles Applicable
Both state and federal constitutions prohibit the government from twice placing a person in jeopardy for the same offense. La.Const. of 1974, Art. 1, Section 15; United States Constitution, Fifth Amendment. Enforcing the constitutional guarantee, and more specifically barring the state from re-trying an individual for the same offense, the Louisiana legislature has enacted Article 591 of the Louisiana Code of Criminal Procedure:
"No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant."
The issue before us primarily concerns whether the present is "a mistrial legally ordered under the provisions of Article 775" of the Code (which we will quote below).
The constitutional protection against double jeopardy bars repeated prosecutions of an accused for the same offense, as well as repeated convictions and multiple punishments for it. Therefore, a mistrial declared by the trial court without the consent of the defendant will ordinarily bar further prosecution of him for the same criminal conduct. State v. Birabent, 305 So.2d 448 (La.1975); United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), Noted, 32 La.L.Rev. 145 (1971).[4]
*630 This rule is subject to limited exceptions, where the court-ordered mistrial is regarded as justified in the interests of the accused or as required by physical or legal necessity. See Note, 32 La.L.Rev. 145 (1971) and Official Revision Comments (b) and (c), Article 775 of the Louisiana Code of Criminal Procedure. As these sources note, while the Louisiana and federal criteria are generally congruent, nevertheless the federal constitutional test justifying a mistrial (and thus not barring re-trial) is more general and in some respects broader, than is the more specific and somewhat more limited conditions provided by Louisiana's constitution and statutory law by which Louisiana trial courts may justifiably declare mistrials without the consent of the defendant.

(1)
For purposes of federal constitutional review, the declaration of a mistrial will not bar re-trial if it is dictated under restricted circumstances by the "manifest necessity" to do so in the interest of justice. Illinois v. Sommerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); United States v. Perez, 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165 (1824). As Sommerville notes, 410 U.S. 464, 93 S.Ct. 1070: "A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial."
The mistrial here ordered met this test, and the federal constitution does not bar re-prosecution as double jeopardy: The improper reference by the prosecutor as to an unrelated crime is regarded as so prejudicial to an accused as to mandate mistrial, if he moves for it. La.C.Cr.P. art. 770(3). The reference prohibited includes not only a prosecutorial statement but also suggestive prosecutorial question. State v. Meshell, 332 So.2d 767 (La.1976).
Under these circumstances, as we read the federal authorities, the trial court had reasonable grounds to conclude that since, after the prejudicial comment, an impartial trial could not be had, a manifest necessity existed for it to declare a mistrial. We are unable to find an abuse of its discretion to do so, insofar as permitted by federal constitutional principles relating to double jeopardy.

(2)
Nevertheless, the trial court's authority to declare a mistrial is, under the present circumstances, more limited under Louisiana state law. By the Louisiana Code of Criminal Procedure, our legislature has placed specific statutory limitations upon the trial court's right to declare a mistrial without the consent of the defendant. Article 591, quoted above in the opinion, then permits re-trial without double jeopardy only where, in the first trial, the mistrial was "legally ordered under the provisions of Article 775".
Article 775 notes only five specified situations in which the trial court may declare a mistrial upon its own motion.[5] Of these, arguably applicable to the present issue is that provided by 775(3): "A mistrial may be ordered, and in a jury case the jury dismissed, when: * * * There is a legal defect in the proceedings which would *631 make any judgment entered upon a verdict reversible as a matter of law. * * *"
Official Revision Comment (c) to this article specifically notes the article's intent to reject the federal "general test" of "manifest necessity" in favor of state criteria authorizing the trial court to declare a mistrial on its own motion to the five situations specified by the article.
Unlike the federal-test's discretion allowed to the trial court to determine when a mistrial is justified by the manifest necessity to assure an impartial trial, in the face of prejudicial trial error the Louisiana judge may order a mistrial without the consent of the defendant for legal defect only when a conviction so obtained would be "reversible as a matter of law." Article 775(3), quoted above. Further, as provided by the next to last paragraph of Article 775 (see footnote 5 above), the trial court may not declare a mistrial if the prosecutor refers to an inadmissible crime, prohibited by Article 770, unless the defendant himself moves for one; and the present record does not reflect such a motion by the accused (see colloquy at footnote 3 above).
Application of These Principles to the Present Case
In the present case, the trial court was not authorized to declare a mistrial because of the prosecutor's comment unless the defendant moved for one. Article 770. The defendant could also have requested an admonition instead of a mistrial. Article 770.
Thus, at the time of the improper prosecutorial question, it did not constitute "a legal defect in the proceedings which would make any judgment rendered on a verdict reversible as a matter of law". Article 775(3). The trial court therefore did not possess the statutory discretion conferred by that code provision to declare a mistrial without the consent of the defendant.
However, the failure of a defendant to object to a mistrial is deemed to be an acquiescence in its ruling which bars subsequent complaint that it was improper. Official Revision Commet (e), Article 775; Article 841. The record here does not reflect any objection by the defendant at the time the mistrial was ordered.
Nevertheless, the defendant argues in brief that his attorney was attempting to object to the mistrial and to accept the more limited relief of an admonition, when he was interrupted by the trial court. See colloquy at footnote 3. The defendant thus strongly argues that, content with discrediting of the state's only eyewitness at the first trial (see footnote 2), he desired to have his innocence or guilt decided by the jury empanelled at his first trial, as was his right under the double jeopardy clauses of the state and federal constitutions.
The issue gave us serious concern. Nevertheless, we ultimately conclude that the record correctly reflects that no objection to the mistrial was intended at the time it was ordered by the trial court:
Based in large part upon the present contention of double jeopardy, in post-conviction proceedings (docket no. 55209) brought by the defendant, we first ordered an out-of-time appeal, see State ex rel. Lawson v. Henderson, 300 So.2d 845 (La.1974), and then an evidentiary hearing to supply any portions of the transcript alleged to be missing, 317 So.2d 619 (La.1975).
A principal complaint was that the record of the first trial should be transcribed and included in the present record. At the evidentiary hearing of November 3, 1975 consequently held (which is in the record of the present appeal), the defendant's counsel acknowledged receipt of the transcript for the first trial (the transcript of June 19, 1973), without complaint at the time that it was incomplete or that he had intended to object to the mistrial at the time it was ordered.
In view of the importance of this issue as set forth in the post-conviction pleadings, we deem it unlikely that so important an omission would not have been noted or raised at the time of this evidentiary hearing, which was specifically ordered by us to permit the record to fully show the basis for the *632 accused's double-jeopardy and speedy-trial contentions.
Further in reviewing the entire colloquy (see footnote 3), including counsel's dissatisfaction with a mere apology for the improper prosecutorial reference and also the untranscribed bench conference immediately following it and preceding the mistrial, we find much support for the prosecutor's construction of the record as reflecting that, following the bench conference, the trial court ordered a mistrial with the consent of the defendant.
We conclude that the failure of the defendant to object to the mistrial as improper constitutes an acquiescence in the ruling, which, equivalent to the consent of the defendant, waives any complaint that the court-ordered mistrial violated his double-jeopardy rights. Official Revision Comment (e), Article 775; Article 841.
We therefore find no merit to Assignments 10 and 17, which urge the issue of double-jeopardy.
Other Assignments:
Assignments 1-7: These assignments raise the issue of the denial of a speedy trial. Without detailing the circumstances (which are set forth in the trial court's per curiams), we simply state that the actions of the trial court are shown to have been justified, nor is any prejudice claimed or proved. The defendant was indicted October 5, 1972, and first actually sought trial for April 19, 1973. He was tried on June 19, 1973, some eight months after indictment. The re-trial was on July 10, 1973.
No prejudice nor unreasonable delay is shown so as to justify dismissing the charge because of a denial of a speedy trial. See State v. Maiden, 261 La. 80, 259 So.2d 20 (1972) and Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
Assignments 8, 9: These concern alleged trial errors in the conduct of the first trial, which ended in a mistrial. They do not affect the validity of the conviction resulting from the second trial. However, defendant now contends by Assignment 9 that a rebuttal witness was called by the state in the first trial with the deliberate intention of eliciting from her improper testimony so as to cause a mistrial.
At the time, the objection to the rebuttal witness testifying was solely as to the surprise nature of her testimony, since she had not been subpoenaed. After this objection was overruled, the state questioned here as to incidents leading up to the shooting, as to whether the defendant had a pistol, and as to whether she had telephoned the police to report who had killed the decedentall without any objection by the defense that this testimony was improper rebuttal. The objectionable testimony came when the state (improperly, as the trial court ruled) sought to show the violent nature of the defendant, as a cause for the witness now denying on the stand that she had reported him to the police.
The claim that this witness was improperly called in rebuttal, with a deliberate prosecutorial attempt to provoke a mistrial, is not supported by the record.
Assignment 11: The objection to the admission of the coroner's report and the proces verbal is without merit. See: La.C.Cr.P. art. 105; State v. Berry, 324 So.2d 822 (La.1975); State v. Jones, 320 So.2d 182 (La.1975); State v. Sneed, 316 So.2d 372 (La.1974).
Assignment 12: The defendant contends that he was improperly denied impeachment of a state witness as to his prior criminal record. The witness was permitted to be examined as to his prior criminal convictions, but not as to the factual circumstances of his parole violations (which were not convictions). The ruling appears to be correct. La.R.S. 15:495.
Assignments 13, 14, 15 and 16 concern a clearly correct evidentiary ruling, some evidence as to which no objection was made at the trial, a requested special charge clearly inappropriate, and the denial of a motion for a new trial. No error is shown by them.

*633 Decree

We affirm the conviction and sentence, for the reasons above set forth.
AFFIRMED.
SUMMERS, J., concurs in the result.
NOTES
[1] At the first trial, a witness testified for the defense in support of a defense of self-defense, alleging that Barber had a knife in his hand. The state sought to impeach the credibility of this witness by his admission of prior convictions and by his partial admission of a prior inconsistent statement.
[2] One of the defendant's principle contentions of prejudice resulting from the mistrial at the first trial is based on this circumstance:

Upon Barber's denial of his prior convictions at the first trial, the defendant proved him to be a perjurer by a police witness called by the defense, who testified as to prior felony and other convictions. The defendant contends that the prosecutor then deliberately caused a mistrial by an impermissible query of a rebuttal witness, so as to avoid a verdict of acquittal by the first jury.
The record does not, however, indicate merit to this contention. See discussion of Assignment 9 in text below.
[3] We will advert later to the contentions with regard to the subsequent colloquy. The full transcript of the colloquy between the court, the defense counsel (Mr. Lawrence) and the prosecutor (Mr. Whalen) is as follows:

Q. [By the state]: Are you aware that your husband has been convicted of manslaughter?
Mr. Lawrence: Hold it. No. He's been admonished.
Mr. Whalen: I apologize, Your Honor.
The Court: Approach the bench.
Mr. Lawrence: You got in it, though you're apologizing.
(Discussion at the bench).
The Court: Gentlemen of the jury, this is a prejudicial error that has been made, and the Court has no alternative but to grant a mistrial.
Mr. Lawrence: Your Honor, if you will
The Court: The Court grants a mistrial in this case. The jury is dismissed, gentlemen. You are discharged.
[4] The essential historical reason is to prevent an accused from being deprived through a mistrial of an acquittal after his trial has started, as well as to prevent governmental harassment of an individual by successive trials for the same offense. See also United States v. Wilson, 420 U.S. 332, 339, 95 S.Ct. 1013, 1020-25, 43 L.Ed.2d 232 (1975) and United States v. Jenkins, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975).
[5] Article 775 provides in full:

"A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds: that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
"A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial." (Italics ours.)