434 So.2d 1057 (1983)
STATE of Louisiana
v.
Tyronne JOSEPH.
No. 82-KA-1122.
Supreme Court of Louisiana.
June 27, 1983.
William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. Craft, David R. Paddison, William Campbell, Asst. Dist. Attys., for plaintiff-appellee.
James Looney, Dwight M. Doskey, Thomas Mull, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
CALOGERO, Justice.
As a result of two incidents in a single evening on August 27, 1979, the defendant, Tyronne Joseph, and a companion, Glen Houston, were arrested and charged with one count of armed robbery, two counts of attempted armed robbery, and one count of attempted second degree murder. The defendants were tried together on the charges stemming from the first incident of the August 1979 evening, the armed robbery of two victims on Canal Street in New Orleans. A twelve member jury convicted both defendants of two counts of armed robbery by unanimous verdict. The trial court sentenced each defendant to thirty years imprisonment at hard labor on each count, the sentences to run consecutively with each other, and with the sentence imposed upon conviction of the other charge which arose out of the second incident of the evening. On appeal, this Court affirmed *1058 these convictions and sentences in a per curiam opinion. State v. Houston and Joseph, 430 So.2d 655, (La.1983).
In the bill of information for the second incident of August 27, 1979, attempted second degree murder involving a victim on Chartres Street, the defendant and Houston were also jointly charged. On November 18, 1979, however, Glen Houston's motion to suppress his confession on the attempted second degree murder charge was granted. Joseph's identical motion that his confession be suppressed was denied. Accordingly, the trial court ordered the defendants' attempted second degree murder trials severed.
Defendant Joseph's trial for attempted second degree murder began on December 20, 1979, but ended in a mistrial on the court's own motion when the state rested, apparently because of the trial judge's concern over the state's not having presented evidence to rebut defendant's testimony that he had not freely confessed to the crime. Prior to the beginning of Joseph's second trial on the attempted second degree murder charge, he filed a motion to quash based upon double jeopardy. The motion was denied.
Joseph was tried on January 17, 1980, for attempted second degree murder and found guilty as charged by a 10-2 jury vote. He was sentenced to fifteen years at hard labor and ordered to pay $70.00 court costs (thirty days in parish prison on default) which sentence was to run consecutively with that imposed upon conviction for the crimes involved in our 430 So.2d 655, discussed above. Defendant now appeals his conviction arguing four assignments of error.
Because we find merit to his Assignment of Error Number Three, we reverse his conviction and sentence for the attempted second degree murder. This ruling of course does not disturb his conviction and sentence for armed robbery affirmed in due course by this Court in 430 So.2d 655.
At trial the state adduced the following facts. At approximately 3:30 a.m. on August 27, 1979, the victim, Daryl Breen, was walking along Chartres Street near the Wildlife & Fisheries Building. While walking he noticed two black men sitting in a parked four-door white 1970 Oldsmobile with two CB antennas, one large one on the bumper and a smaller one on the middle of the trunk. As he passed by the car the passenger opened the door, jumped out, pointed a pistol at him, and yelled "Freeze,...." Breen stopped momentarily, then turned and ran up Chartres towards St. Louis Street. After about three strides he heard the pistol fire. He heard the bullet pass by his right ear and then he heard its impact. He continued running to a nearby hotel where a desk clerk phoned the police.
Approximately three or four minutes afterwards Officer Hurban arrived at the hotel. Breen specifically described the car and clothing of both men. Hurban immediately broadcast a description of the car over his radio. When another unit soon spotted the car on St. Claude Avenue headed back towards the French Quarter, Hurban headed downtown on St. Claude with the victim in his police car. The described vehicle was coming toward them and was being pursued by two police units. As Hurban turned across the neutral ground on St. Claude to block the car's path, Breen saw the car and said "That is the vehicle they were using." The pursued car came to a sudden halt. The two occupants attempted to flee on foot but were captured after a struggle. Breen, who had been lying on the floorboard of the police vehicle during the capture, then identified the pair as his assailants. A small caliber handgun with five live rounds and one spent one in the chamber was found on the floorboard of the Houston's car beneath the driver's seat.
Joseph gave a statement to Hurban at approximately 6:45 a.m. on August 27, 1979, wherein he admitted that he had driven Houston's car into the Quarter and that Houston had fired a shot (with Joseph's gun) at the victim in the robbery attempt. At trial Breen identified Joseph as the driver of the Oldsmobile.
The initial trial on the attempted second degree murder charge proceeded through voir dire, the state's case and the defendant's case. As soon as the defense rested, the assistant district attorney rose and began *1059 his closing argument. The Court inquired whether the state intended to rest. After a brief pause, the prosecutor indicated that he had indeed rested. Thereupon the court declared a mistrial.[1]
The minutes state the mistrial was declared "[b]ecause the State did not put on rebuttal evidence on Defendant's allegations on the statement [confession]." Defendant, who had not himself sought a mistrial, did not object or say anything more after the trial judge declared the mistrial.
The state contends that, since the defendant did not voice any objection to the trial court's sua sponte order of mistrial, his failure to object prevents him from complaining on appeal of the trial court's action. The argument is not persuasive.
As support for their contention the state refers this Court to comment (d) of La.C. Cr.P. art. 775,[2] quoted below, and the case of State v. Lawson, 338 So.2d 627 (La.1976). In Lawson, we found that the failure of the defendant to object to a mistrial was deemed to be an acquiescence in the court's ruling which barred any future complaints about double jeopardy. The Lawson declaration of a mistrial was for the benefit of the defendant. During the state's examination of its rebuttal witness, the common law wife of the defendant, she was asked, "Are you aware that your husband was convicted of manslaughter?" At that point, defense counsel objected. "Hold it. No. He's been admonished." The court then, after a bench discussion with the attorney's ordered the mistrial because a "prejudicial error ... has been made." 388 So.2d at 629.
Three years later in State v. Simpson, 371 So.2d 733 (La.1979) a mistrial was declared by the trial judge for what he perceived was the state's interest after the state protested that defense counsel's questioning of a key state witness was unfairly emphasizing the possibility that the witness had prior convictions when it was evident that there were no such convictions.
After considering both Comment (d) of La.C.Cr.P. art. 775 and Lawson, we concluded in Simpson that the absence of a contemporaneous objection would not bar a plea of double jeopardy urged at the commencement of a second trial when the first trial had ended in a mistrial by the district judge's own motion, and when the motion had not benefitted the defendant.
To reach that decision we examined United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) which demonstrated that a mistrial declared without the defendant's consent and in the absence of manifest necessity is likely to trigger double *1060 jeopardy, especially if the mistrial was not declared for the defendant's benefit. 371 So.2d at 736.
Furthermore, in examining our jurisprudence on the matter, we found that the statutory grounds for ordering a mistrial contained in La.C.Cr.P. art. 775 limited the scope of the manifest necessity rule developed in the federal jurisprudence. State v. Lawson, 338 So.2d 627 (La.1976). Therefore mistrials declared without the defendant's express consent (La.C.Cr.P. art. 591) which were not based on any of the grounds enumerated in La.C.Cr.P. art. 775 were illegally ordered, the consequence of which was that further prosecution would be barred by double jeopardy considerations. Comment (d) should be read together with comment (e) of La.C.Cr.P. art. 775:
(d) When a mistrial is improperly ordered, the defendant must object at the time and reserve a bill of exceptions. Otherwise, he will be deemed to have acquiesced in the court's ruling. Art. 841.
(e) This article must be considered in the light of Art. 591, which reads as follows:
"Art. 591. Double jeopardy; definition
No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant."
The effect of the articles taken together is as follows:
(1) Mistrials, without the consent of the defendant, are permitted under certain limited circumstances such as inability of the jury to agree, physical impossibility to proceed, etc.
(2) All other dismissals of the jury prior to verdict without the defendant's consent will not be mistrials at all, even though the court may so label them, but will be illegal dismissals, and in such cases the principles of double jeopardy will come into operation.
As a final point in Simpson this Court noted that the failure of the defendant to object to a mistrial which he had not sought and from which he was not benefited was inconsequential since once a mistrial is declared the trial is over. We stated clearly at 371 So.2d 738:
it is apparent that contemporaneous objection and reservation of a bill are not applicable to a plea of double jeopardy. As originally drafted, Article 841 did not require a bill to be reserved for "a ground for arrest of judgment under Article 859...," one of which is double jeopardy. Moreover, it is clear that requiring a contemporaneous objection to an improperly granted mistrial does not advance the purpose of the rule, which is to put the trial judge on notice of the alleged irregularity and to provide him with the opportunity to correct the problem during trial. State v. Dupre, 339 So.2d 10 (La. 1976); State v. Charles, 326 So.2d 335 (La.1976). When a mistrial is declared, the jury is dismissed. (Compare the effect of granting a motion for acquittal, even when erroneously granted. State v. Hurst, 367 So.2d 1180 (La.1979). Unless the defendant anticipates the declaration of a mistrial, the trial ends without the opportunity to object. See United States v. Jorn, supra.

In addition to the above, a function of the contemporaneous objection rule is to facilitate appellate review of adverse lower court rulings. Since appellate review does not in the normal course follow a trial aborted by the grant of a mistrial, this purpose is not served by the noting of an objection to the granting of a mistrial.
We conclude therefore, as we did in Simpson, that a plea of double jeopardy should be maintained when the defendant has been impermissibly deprived of his right to have his trial completed by the jury before which he had been placed in jeopardy, by the court's own granting of a mistrial without the defendant's express consent and without his interest having prompted the court ruling.
*1061 The only remaining question is whether this case is one which ended without the defendant's express consent and for reasons which did not include serving defendant's interest.
The trial judge gave no oral or written reasons for granting the mistrial. The minutes, however, reflect that the motion for mistrial was granted because the state had not rebutted the defendant's allegations about his statement/confession. The state, having the burden of proving the voluntariness of a defendant's confession, is required to rebut the defendant's specific allegations of police misconduct. See e.g., State v. Burkhalter, 428 So.2d 449 (La. 1983).
In this case, the trial court apparently concluded that the failure of the prosecutor to present any rebuttal testimony was a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law, La.C.Cr.P. art. 775(3). However the trial court erred in this regard.[3]
In summary, there did not exist any grounds for mistrial recited in La.C.Cr.P. art. 775. What happened here was not the type of legal defect contemplated in La.C. Cr.P. art. 775(3) which would make any judgment reversible as a matter of law. Furthermore the defendant had not expressed consent (La.C.Cr.P. art. 591) nor, under our jurisprudence regarding mistrials benefitting the defendant, can we derive any sort of acquiescence by Joseph to the court ordered mistrial. Defendant was exposed to jeopardy at the first trial and his motion to quash because of double jeopardy at the outset of retrial was meritorious. The trial judge erred in denying the motion.

Decree
For the foregoing reasons, the conviction and sentence of Tyronne Joseph for attempted second degree murder are reversed and the charges dismissed.
REVERSED; DISMISSED.
DIXON, C.J., subscribes to the opinion, with additional concurring reasons.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents. The defendant did not object to the trial judges order declaring a mistrial and accordingly the matter was not reserved on appeal for our consideration.
DIXON, Chief Justice (concurring).
I subscribe to the opinion. It would seem that C.Cr.P. 591 removes any doubt that principles of double jeopardy prevented a second trial. Grounds for mistrial are stated only in C.Cr.P. 775. If these grounds do not exist, the "express consent of the defendant" to a mistrial must be obtained, or *1062 he cannot be tried again. C.Cr.P. 591 states:
"No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant."
MARCUS, Justice (dissenting).
I agree with Comment (d) to article 775 that, when a mistrial is improperly ordered, the defendant must object at the time. Otherwise, he will be deemed to have acquiesced in the court's ruling. La.Code Crim.P. art. 841. Defendant's objection would enable the trial judge to correct his error in improperly granting a mistrial.
Accordingly, I respectfully dissent.
NOTES
[1] The record reveals the following transpired before the mistrial was declared.

MR. LOONEY: The defense rests, Your Honor.
MR. THOMAS: What we have here is what they call a closing argument ...
THE COURT: Wait, you rest?
MR. THOMAS: I rest.
THE COURT: You rest, Mr. Thomas?
MR. THOMAS: Oh, I'm sorry. It's been a long day. One moment, Your Honor,
Yes, Your Honor, State rests.
THE COURT: You want to come in my office.
(Thereupon, a conference is held between the State and Defense Counsels in chambers, outside the presence of the Jury.
(Upon return.
THE COURT: Ladies and gentlemen, I'm sorry we kept you here for such a long time. But because of a legal question, I have to declare a Mis-trial. I can't explain it to you because it's not going to make much sense. You're discharged from the case.
[2] Comment (d) of La.C.Cr.P. art. 775 reads as follows:

(d) When a mistrial is improperly ordered, the defendant must object at the time and reserve a bill of exceptions. Otherwise, he will be deemed to have acquiesced in the court's ruling. Art. 841.
La.C.Cr.P. art. 841 relates to the contemporaneous objection rule and reads in full:
An irregularity of error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court and the grounds therefor.
The requirement of an objection shall not apply to the court's ruling or any written motion.
[3] The state, of course, must have proven prior to the admission of statement at trial that it was given freely and voluntarily including the specific rebuttal of defendant's allegations. That was done in the instant case where both sides stipulated that the testimony on the predicate would be the same as that presented at the suppression hearing. Defendant then took the stand and testified that the confession was beaten out of him. Because the admissibility of the confession had already been determined during the state's case in chief, the defendant's testimony merely served to undercut the weight given to the confession by the jury. The state then had the choice to present rebuttal evidence to "rehabilitate" the confession, or not. The trial court's sua sponte mistrial ruling then has no valid basis under La.C.Cr.P. art. 775, particularly in the light that its own ruling on defendant's pretrial suppression motion was binding at trial. La.C.Cr.P. art. 703(B), Acts 1978, No. 746.

In any event, on appeal of a conviction of the first trial, defendant would have been entitled only to a remand of the case for a rehearing on the suppression issue. See, e.g., State v. Haynie, 395 So.2d 669 (La.1981); State v. Stevenson, 374 So.2d 1189 (La. 1980); State v. Simmons, 328 So.2d 149 (La. 1975). In defendant's second trial the state recalled Hurban and Kastner to rebut his allegations of physical abuse. The failure to rebut his allegations of physical abuse. The failure of the state to do so the first time around therefore did not constitute an error that necessarily would have compelled a reversal of any conviction obtained.
Even assuming that the state had blundered crucially, the trial court could have directed the prosecutor to reopen his case and present additional testimony, as closing arguments had not yet begun. La.C.Cr.P. Art. 765(5).