774 So.2d 353 (2000)
STATE of Louisiana
v.
Shawn ANTOINE.
No. 00-564.
Court of Appeal of Louisiana, Third Circuit.
December 6, 2000.
*354 Robert C. Vines, Assistant District Attorney, Lake Charlse, Louisiana, Counsel for State-Appellee.
Robert J. Pastor/Robert G. Rivard, New Orleans, Louisiana, Counsel for Defendant-Appellant.
(Court composed of HENRY L. YELVERTON, ULYSSES G. THIBODEAUX, and SYLVIA R. COOKS, Judges).
COOKS, Judge.
On May 12, 1999, a jury returned a verdict form convicting defendant, Shawn Antoine, of "attempted possession with intent to distribute." The defendant was subsequently sentenced to serve a twelve-years, hard labor term in prison. Defendant appeals his conviction and sentence arguing twelve assignments of error.

FACTS AND PROCEDURAL HISTORY
On February 3, 1998, Detective Chad Hazelwood of the New Iberia Police Department received information from a confidential informant that Shawn Antoine and Lonnie Miller were distributing crack cocaine at Brother's Pool Hall near the intersection of Hopkins and Pershing Streets in New Iberia. Detective Hazelwood proceeded to the scene to conduct surveillance. Shortly thereafter, Detective Hazelwood observed Antoine and Miller exit the pool hall, enter a black Chevy Impala and drive away. Detective Hazelwood followed the vehicle in an unmarked police car for a short distance until the vehicle stopped at 608 Frenzel Street. Antoine and Miller exited the car, leaving the engine running, and began to run in different directions. Antoine testified he ran because Detective Hazelwood exited his car with his weapon drawn and did not identify himself as a police officer.
Detective Hazelwood chased Antoine a few feet down the driveway of 608 Frenzel, where Antoine tripped and fell under the carport. Detective Hazelwood testified he watched Antoine pull away lattice work from the house and discard something under it. The Acadiana Crime Lab later identified 23.7 grams of cocaine found in the package retrieved from under the house. Residue in the right front pocket of Antoine's pants also tested positive for cocaine.
On May 11, 1998, the District Attorney for Iberia Parish charged Shawn Antoine with possessing between 28 and 200 grams of cocaine, a violation of La. R.S. 40:967(F). On February 17, 1999, an amended bill of information was filed charging Antoine with possession with intent to distribute cocaine, a violation of La.R.S. 40:969(A). The District Attorney re-arraigned Antoine on the amended bill on March 9, 1999, the day voir dire began. *355 After the first day of trial, defense counsel's illness prompted the trial judge to grant a recess, which lasted two months. Defendant filed a Motion for Mistrial on April 30, 1999, which was heard and denied on May 11, 1999, the date trial resumed. At the conclusion of trial, the jury rendered a 10-2 verdict finding Antoine guilty of attempted possession with intent to distribute.
On appeal, the defendant assigns the following errors for review:
1. The Honorable Court below erred in denying defendant-appellant's motion to suppress the evidence.
2. The Honorable Court below erred in denying defendant-appellant's motion to compel the state to reveal the confidential informant.
3. The Honorable Court below erred in denying defendant-appellant's motion for a continuance of the trial after he was re-arraigned on a new bill stating a new offense one day before the trial was to start.
4. The court below erred in denying defendant's Motion for Mistrial.
5. The court below erred in varying the trial order to permit second opening statements and repeated direct testimony by Detective Hazelwood.
6. The court below erred in denying defendant's objection for cause to excuse juror, Albert Decambre.
7. The court below erred in refusing to compel the state to give a reason for using a peremptory challenge against a black, female juror after defendant raised a Batson challenge.
8. The court below erred in overruling defendant's hearsay objection to Detective Hazelwood's testimony at trial regarding the information that he received from a confidential informant that defendant was distributing cocaine.
9. The finding of guilty by the jury was in error because there was insufficient evidence presented during the trial upon which a verdict of guilty could be based, thereby denying appellant due process and equal protection of the law under the Ninth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 and 16 of the La. Constitution of 1974.
10. The court below erred in accepting a verdict and sentencing the defendant when the verdict returned by the jury failed to set forth a criminal offense.
11. Defendant's sentence imposed is excessive, in violation of La. Const. art. 1, § 20 (1974).
12. Any and all errors patent on the face of the record.

LAW AND DISCUSSION
Defendant contends the trial court erred in not granting his Motion for Mistrial because defense counsel's illness unduly prejudiced his right to a fair trial and constituted a legal defect in the proceedings. Defendant also contends the two month trial recess was such a variance in normal procedure that the delay prejudiced his right to a fair trial. The defendant points out, as well, the trial court allowed the jury to hear the State's opening arguments and testimony from Detective Hazelwood twice, both before and after the two-month recess. The jury also was allowed to view a police "re-enactment" video of the offense on two separate occasions. Defendant contends this too formed a basis for mistrial because twice presenting this evidence to the jurors caused them to give greater weight to it.
Additionally, defendant attacks the trial court's failure to grant his request for continuance, at the outset of trial, because the State waited until the day voir dire began to arraign him on an amended bill of information which charged that he not only possessed cocaine but intended to distribute *356 it. Defendant argues the State's failure to timely notify him that it intended to try him for allegedly committing the more serious offense prejudiced his right to notice and an adequate time to prepare for trial.
La.C.Cr.P. art. 775 provides a mistrial may be granted when prejudicial conduct in or outside the courtroom makes it impossible for a defendant to obtain a fair trial, or when a legal defect in the proceedings occurs which would make any judgment entered upon a verdict reversible as a matter of law. Article 775 also provides a mistrial may be granted when it is physically impossible to proceed with a trial. The determination rests within the sound discretion of the trial judge, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Green, 98-1388 (La.App. 3 Cir. 3/31/99); 735 So.2d 723; State v. Hopkins, 626 So.2d 820 (La.App. 2 Cir.1993)(citing State v. Smith, 433 So.2d 688 (La.1983)). However, Article 775 lists several categories supporting the granting of a mistrial which suggests the determination is not left to the unfettered discretion of the trial court. State v. Moten, 510 So.2d 55 (La.App. 1 Cir.1987), writ denied, 514 So.2d 126 (La.1987). See Comment (c)(1) of La.C.Cr.P. art. 775. Where the defendant suffers prejudice so poignant as to deprive him of any reasonable expectation of a fair trial, it is a clear abuse of the trial court's discretion not to grant a mistrial.

Defense Counsel's Illness
On May 11, 1999, the trial court heard defense counsel's argument for mistrial based on his ineffectiveness throughout voir dire and the remainder of the proceedings conducted on the first day of trial. The transcript reads in pertinent part:
No, Judge, it's just I'll be very candid in terms of the motion in the sense that the Court is very well aware from the medical statement that it received from my treating physician, Donnell Washington, Jr. that I had to be hospitalized. I had to be hospitalized because of the hypoglycemia, and I'm sure the Court is aware the literature indicates the symptoms, and as I've been candid with my client as I was candid in motion, though embarrassing, but candid, that I do not believe considering the illness that I was, I was effective for my client as I, as I would need to be as an advocate in the courtroom. I feel a disservice for me not to be up front with the Court and with him considering the circumstances I was experiencing that afternoon. I had no idea what was happening. And when I approached the Court that afternoon and indicated I had a problem and I needed to seek medical attention, I left here, I left the court and went directly to my doctor's office.
* * * * *
At which point testing revealed a very low blood sugar level, that even as of that Monday could not be correct and which required that I be subsequent hospitalized.
* * * * *
Judge, I put my embarrassing below, the embarrassment of my medical situation below my obligation to my client. His obligationhis right, entitlement to, to a zealous representation, to a fair and impartial trial. Yes, I'm embarrassed. I regret what happened. I did not recognize it.
If the Court will recall it, the last phase of voir dire I was very inactive and veryin the last stage of voir dire, and in fact, when we went into the, went in to rule on a Batson challenge, the last question, the last jury wasone juror, the question was why did I not want him. And only thing I would tell the Court was I just don't like tug boat operators. Look at my notes. That's the only thing I had. I wasn't with it, *357 Judge. I didn't realize at that time, but after the fact I did.
At the close of counsels' arguments, the judge issued the following ruling:
The Court is prepared to rule.
Although I have not received any law on this issue, it's my appreciation of the law that the issue for the Court is whether the medical condition of the attorney affected the defendant's right to a fair trial. I don't mean to deny a medical condition. It existed, but it is my view that the medical condition that was manifested in the courtroom does not affect the ability of the defendant to have a fair trial.
I base that upon the conduct during voir dire which was a fineI base that upon an evaluation of the conduct of the defense lawyer during voir dire. He throughly [sic] covered a variety of interesting issues that might have affected the jurors and his conduct was not different from his conduct as I know it to be from his practice before this Court.
* * * * *
But the vigor of the defense to me was not affected by the condition of the defendant, of the defense lawyer. That is my ruling.
In State v. Moten, 510 So.2d 55 the prosecuting assistant district attorney became ill the day following jury selection. A substitute assistant district attorney informed the court that no other assistant district attorney was prepared to try this case, so the trial court granted a mistrial on the grounds that it was physically impossible to proceed with the trial. Id. In the instant proceeding, the prosecution does not contest the genuineness of defense counsel's illness which led to his subsequent hospitalization.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel generally is most appropriately addressed through an application for post conviction relief rather than on direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). It is well settled, however, that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, the appellate court may consider the issue in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La.1993). Because the record contains sufficient evidence to decide the ineffectiveness issue, we elect to address it on appeal.
A defendant is entitled to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. This right is fundamental to our system of justice and a cornerstone in assuring that defendants receive a fair trial not unduly prejudiced by their counsel's ineffective assistance. "Effective counsel" has been defined to mean "not errorless counsel", and not counsel judged ineffective by hindsight, but counsel likely to render reasonably effective assistance. State v. Ratcliff, 416 So.2d 528, 531 (La.1982)(quoting United States v. Fruge, 495 F.2d 557, 558 (5 Cir. 1974)). The claim is assessed by the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Id. To prevail, the defendant must not only show that counsel's performance was deficient, but also that a reasonable probability existed that he was prejudiced by the deficiency. Brooks, 661 So.2d 1333. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
In the present case, defense counsel sought medical attention immediately following the first day's court proceedings. He required hospitalization after tests revealed he was suffering a very low blood sugar level. In arguing the motion for mistrial, counsel though admittedly embarrassed, candidly revealed he "had no idea *358 what was happening" in the courtroom that day because of his hypoglycemic condition.
Counselor identifies several errors allegedly committed by him during the first day of trial, which he claims prejudiced defendant's right to effective counsel. First, he failed to object when the court permitted the State to backstrike jurors after they had been sworn. Further, he failed to object when the court dismissed a juror without any explanation whatsoever. "Tellingly," he notes, "both of the last two jurors voted to convict, and neither would have been sitting had counsel made timely objections." In addition, Detective Hazelwood provided extensive testimony, the subject of which defense counsel urges was in part, inadmissable hearsay. Although the record shows defense counsel initiated numerous objections during Hazelwood's testimony, the vigor and effectiveness of his protestations, he claims, were unfairly dampened by his illness.
We cannot say, after reviewing the record as a whole, defense counsel's admitted inability to fully participate and effectively safeguard his client's right to the selection of a fair jury during the voir dire proceedings did not prejudice defendant. The degree to which counsel's condition impacted his effectiveness during trial and ultimately played a role in the jury's deliberations is not subject to exact measurement or even close approximation. But such proof is not required here. A mistrial is warranted unless it can be said confidently that counsel's illness played no role in the outcome of the case. We are not so sure. The jury's 10-2 verdict convicting defendant of a lesser offense strongly suggests the evidence of defendant's guilt was not so great that the jury could not have been affected by defense counselor's overall effectiveness or that the verdict would not have been different had he voiced timely challenges or objections during voir dire.
Further the highly unusual nature of the two-month recess between commencement of trial, and its resumption introduced the danger that the memory of each juror might have significantly faded. The trial court's later attempt to refresh the jurors' memories by allowing the State to recall Detective Hazelwood and to replay a video re-enactment of the crime might have caused them to give greater weight to the State's evidence than they would have on first impression.
We are also troubled because the record does not reflect when defendant received notice that the State intended to try him for allegedly committing the more serious offense of distributing cocaine. The State notes the amended bill was "filed into the official record on February 17, 1999," and it seeks to convince us defendant must have received notice of the filing because defense counsel stated in a motion mailed on March 3, 1999 "defendant is charged with possession with intent to distribute cocaine." The amended bill was filed only three weeks prior to commencement of trial and the record does not show it was ever forwarded to defendant or his attorney. Exactly when defense counsel received notice of the filing is still a mystery in the record. But there is absolutely nothing in the record which even remotely indicates when defendant was apprized of the filing prior to trial or that he waived his constitutional right to such notice.

DECREE
For the foregoing reasons, defendant's conviction and sentence are reversed and the case is remanded for a new trial. We pretermit considering the remaining errors assigned by defendant.
REVERSED AND REMANDED.
YELVERTON, J., concurs.
THIBODEAUX, J., concurs and assigns additional reasons.
*359 THIBODEAUX, J., concurring.
I would reverse the defendant's conviction and remand for a new trial for additional reasons. Detective Hazelwood's testimony on what the confidential informant told him was inadmissible hearsay. The confidential informant's statement directly tied the defendant to the crime for which he was charged. The officer's explanations for his actions were marginally relevant for purposes of trial and the hearsay testimony involved the direct assertion of the defendant's criminal activity. I cannot say that the defendant's conviction was surely unattributable to this error. Rather, the confidential informant's statement was a "direct assertion of criminal activity by the accused." State v. Granier, 600 So.2d 1334 (La.1992) (Lemmon, J., concurring).