# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 04-499 consolidated with 04-500

**STATE OF LOUISIANA**

**VERSUS**

**JIM HOWARD, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NUMBER 67,007
HONORABLE JOHN PHILIP MAUFFRAY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLIE COLOMBARO WOODARD**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Chief Judge Ulysses G. Thibodeaux, Billie Colombaro Woodard, and Oswald A. Decuir, Judges.

**CONVICTION AND SENTENCE AFFIRMED.**

Walter E. Dorroh, Jr., Assistant District Attorney
David W. Burton, District Attorney
28th Judicial District
Post Office Box 1940
Jena, Louisiana 71342
COUNSEL FOR PLAINTIFF/APPELLEE:
    State of Louisiana

Christopher A. Aberle
Louisiana Appellate Project
Post Office Box 8583
Mandeville, Louisiana 70470
(985) 871-4084
COUNSEL FOR DEFENDANT/APPELLANT
    Jim Howard, Jr.

WOODARD, Judge.

Defendant, Jim Howard, Jr., appeals his conviction and sentence for conspiracy to distribute a controlled dangerous substance. For the following reasons, we affirm his conviction and his sentence.

* * * * *

On January 11, 2001, Carla Whitstine, a detective with LaSalle Parish Sheriff's Office; Karlyon Holston, a deputy with Rapides Parish Sheriff's Office; Sharon Smith, a confidential informant; and two undercover agents, working with the Metro Narcotics Task Force were cruising in their vehicle looking to set up a drug purchase. At approximately seven o'clock in the evening, they encountered the Defendant, Mr. James Howard, Jr., standing in front of a red van in a convenience store parking lot. Smith got out of the vehicle and approached him. When she returned to the vehicle, she told the agents that he wanted to know what they wanted. She testified that she went back and told him that her friends wanted two rocks of crack cocaine.

A few minutes later, Earnest "Kicker" Jones walked up to the vehicle and said that Howard wanted to know what they wanted. The agents told Jones they wanted two rocks of crack cocaine. After a brief period, Jones returned and told the agents to follow Howard in their vehicle because he did not want to do business in front of the store. All three witnesses testified that they saw Howard get into the red van. Jones got into his vehicle, and the two vehicles followed the red van down the road.

Eventually, the undercover agents and Smith saw the red van parked next to Jones' vehicle, then the van left the scene. Not sure of what was happening, the undercover agents and Smith drove past Jones' vehicle. Shortly afterwards, Jones signaled the agents over and gave them two rocks of crack cocaine in exchange for forty dollars. He told them that if they wanted more drugs, to come to him, that Howard had "hooked him up."

Six months later, officers arrested Howard in his home. The State charged him, with two counts of conspiracy to distribute a Schedule II controlled dangerous substance, in violation of La.R.S. 14:26, 40:964(A)(4) and 40:967(A)(1), and two counts of distribution of a Schedule II controlled dangerous substance, in violation of La.R.S. 40:964(A)(4) and 40:967(A)(1).

1

On June 20, 2003, a jury, deadlocked on the other charges, found Howard guilty of one count of conspiracy to distribute a controlled dangerous substance. On November 5, 2003, the trial court sentenced him to fifteen years at hard labor and ordered him to pay court costs.

On June 24, 2003, the State filed a habitual offender bill against Howard. The trial court found him guilty, vacated the previously imposed sentence, and imposed life imprisonment pursuant to La.R.S. 15:529.1. Alleging that the sentence was excessive, Howard made an oral motion for reconsideration of the sentence, which the trial court denied. He did not file a written motion.

Howard appeals his conviction of conspiracy to distribute a controlled dangerous substance and his habitual offender sentence.

\* \* \* \* \*

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. In the instant case, we find none.

**HEARSAY**

Louisiana Code of Evidence Article 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Louisiana Code of Evidence Article 802 holds that "hearsay is not admissible except as otherwise provided by this code or other legislation."

Howard alleges that the trial court erred when it allowed testimony of inculpatory statements, attributed to him, because the statements were hearsay. He, further, asserts that these statements are the only direct evidence of the alleged conspiratorial agreement between him and Jones and that, without the statements, he likely would not have been convicted of a conspiracy.

Detective Whitstine made two statements he objected to at trial. First, the detective testified that after Smith had a brief conversation with Howard, she returned to the vehicle and told the agents that Howard wanted to know what they wanted. Both agents testified they, personally, did not hear this conversation between Smith

2

and Howard. The trial court ruled that the detective's testimony as to what Defendant said to Smith was admissible under La.Code Evid. art. 801(D)(4).

Article 801(D)(4) provides:

> **D. Statements which are not hearsay.** A statement is not hearsay if:
>
> . . . .
>
> **(4) Things said or done.** The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.

In *State v. Williams*,[1] this court stated:

> The *res gestae* doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime, if the continuous chain of events is evident under the circumstances. A defendant's comments to police officers, which formed an integral part of the transaction, were admissible under the *res gestae* exception.

Further, in *State v. Matthews*[2] and *State v. Thompson*,[3] undercover officers testified to statements which the defendants made that they did not hear. In each case, however, the officers had recent prior conversations with the defendants concerning the purchases of the drugs and the defendants' statements, as third persons had relayed to them to the officers, linked the defendants' actions with the previous conversations with the officers and, as such, formed part of the *res gestae* of the crimes. Therefore,

---

[1] 614 So.2d 252, 254 (La.App. 3 Cir. 1993) (citations omitted).

[2] 98-252 (La.App. 5 Cir. 10/14/98), 720 So.2d 153.

[3] 27,543 (La.App. 2 Cir. 12/6/95), 665 So.2d 686.

the appellate courts found that the trial courts did not err when they ruled the statements were admissible pursuant to La.Code Evid. 801(D)(4).

Likewise, we do not find error in the trial court's decision in the instant case. "The testimony of a police officer may encompass information provided by another individual without constituting hearsay if offered to explain the course of the police investigation and the steps leading to the defendant's arrest."[4] Howard's question to Smith indicated that a drug purchase was possible and, as such, formed an integral part of the transaction.

Moreover, both declarants in this case, Smith and Howard, were in court and testified regarding the statement. At trial, Smith testified that after she and the two agents saw Howard standing outside the convenience store, she approached him and inquired whether he had any drugs for sale. She testified that she returned to the agents, waiting in the vehicle and told them, "Jim wants to know what we want." Howard testified that when Smith asked him about drugs for sale, he told her, "You know I don't do that anymore."

Finally, Howard objected only to Detective Whitsine's testimony. He did not object to Smith's testimony regarding his statement, nor did he object when Deputy Holston testified regarding the same statement. Hearsay that is not objected to becomes substantive evidence.[5] Furthermore, objections not made at the time of occurrence are waived on appeal.[6] Therefore, Howard waived his right to object to the admissibility of this statement.[7]

For all the above reasons, the assignment of error concerning this statement is without merit.

The second statement Howard objected to at trial is the statement which Kicker Jones made, as Detective Whitstine repeated, that if the agents wanted more drugs, to come and see him (Jones) because Howard had "hooked him up." Kicker Jones did not testify, but all three witnesses, Smith, Whitsine and Hoston, testified to this statement.

---

[4]*State v. Smith,* 98-1417, p. 16 (La. 6/29/01), 793 So.2d 1199, 1204.

[5]*State v. Dabney*, 02-934 (La. 4/9/03), 842 So.2d 326.

[6]*See* La.Code Crim.P. art. 841.

[7]*State v. Smith,* 98-1417 (La. 6/29/01), 793 So.2d 1199.

4

At trial, Howard stated that, although he knew Kicker Jones, he did not see him at the convenience store that evening and that although the red van parked in front of the store was his father's van, his brother, Dwayne, was driving it that day, and he was in the back of the store playing pool at the time.

Howard argued that the statement Detective Whitstine had reported was hearsay. The trial court overruled his objection, and ruled that the statement was not only admissible under La.Code Evid. 801(D)(4) but was also admissible under La.Code Evid. 801(D)(3)(b). Article 801(D)(3)(b) provides that a statement is not hearsay if:

> (3) **Relational and privity admissions.** The statement is offered against a party, and the statement is:
>
> (b) A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established.

Howard further argued that the State failed to establish a prima facie showing of a conspiracy.

In *State v. Matthews*,[8] the second circuit held:

> A prima facie case of conspiracy is presented when the state introduces evidence which, if unrebutted, would be sufficient to establish the facts of the conspiracy. *State v. Nall,* 439 So.2d 420 (La.1983). The statements of the declarant may be considered by the trial court in making the preliminary determination of whether there is prima facie evidence of a conspiracy. However, the statements by themselves will not establish a prima facie case of conspiracy. *State v. Myers*, 545 So.2d 981 (La.1989). The state must provide other evidence that is independently admissible to support the prima facie case of conspiracy.
>
> The standard for determining the admissibility of statements made by co-conspirators is less than that required to convict a defendant of conspiracy to commit an offense. Such statements, if admissible, only constitute evidence which the jury may consider in reaching its conclusion as to whether a defendant did or did not unlawfully participate in a conspiracy to commit an offense beyond a reasonable

---

[8]26,550 (La.App. 2 Cir. 12/21/94), 649 So.2d 1022, 1029, *writ denied*, 95-0435 (La. 6/16/95), 665 So.2d 341. *See also*, *State v. Nguyen,* 02-0410 (La.App. 3 Cir. 10/2/02), 827 So.2d 1248.

5

doubt. Accordingly, a trial court's determination as to the admissibility of such evidence, i.e., whether the state has made a prima facie showing of a conspiracy as to make the co-conspirators' statements admissible or inadmissible under LSA-C.E. Art. 801(D)(3)(b), will not be overturned absent clear error. *State v. Lobato*, 603 So.2d 739 (La.1992), remanded on other grounds.

In brief, Defendant argues:

> Those statements are not admissible as coconspirators statements because the court erred in concluding that the State had established a prima facie case of conspiracy.
>
> Although the court did find that a conspiracy existed, the evidence connecting Howard and Kicker is the testimony that they may have spoken to each other in the parking lot and that they briefly spoke again on the road when Kicker pulled up next to him. Given that Howard and Kicker may well have been friends who talk to each other this evidence is thoroughly ambiguous and cannot suffice to allow the district court to conclude that Howard and Kicker conspired with each other to provide the undercover operatives with cocaine. In fact, under the circumstances, the only information that indicates that Howard could have been conspiratorial liable for Kicker's act of selling cocaine was the offending hearsay statement itself.

In brief, the State responds that the sequence of events was sufficient to establish a prima facie case of conspiracy. Testimony at trial established the following: first there was an approach by Smith to Howard and a conversation between them ensued regarding the purchase of drugs. Jones, then, approached the undercover agents regarding the purchase of drugs. The witnesses observed Jones having a conversation with Howard, after which they were instructed to follow him in their vehicle. All three witnesses observed Howard enter the van. The undercover agents followed the red van and Jones' vehicle to a secluded spot and observed Jones' vehicle and the red van side-by-side. Shortly afterwards, Jones delivered the drugs.

This course of events, coupled with the statement Jones made that the Defendant had hooked him up, were sufficient to establish a prima facie showing of conspiracy. "The standard for determining the admissibility of statements made by co-conspirators is less than that required to convict a defendant of conspiracy to commit

an offense."[9]  Therefore, the trial court did not err when it allowed the statement to be admitted into evidence pursuant to La.Code Evid. 801(D)(3)(b) and (D)(4).

Howard also complains that the statements Kicker Jones attributed to him that he wanted to know what the agents wanted to purchase and that he did not want to do business in the parking lot, to which all three of the State's witnesses testified, were hearsay and erroneously admitted.

However, under the circumstances of the present case, this court need not resolve whether the trial court erred when it permitted the witnesses' testimonies regarding what Jones said the Defendant had said. The error, if any, is harmless because Howard failed to object at trial to the statements when all three witnesses repeated them. As previously noted, hearsay that is not objected to becomes substantive evidence.[10]  Objections not made at the time of their occurrence are waived on appeal.[11]  Further, if the inadmissible hearsay evidence is merely cumulative or corroborative of other testimony adduced at trial, its admission is considered harmless.[12]

Finally, Howard alleges ineffective assistance of counsel for failure to adequately object to all the hearsay statements attributed to him.

> Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal.[13]

However, we find the record is sufficient to resolve Howard's claim of ineffective assistance of counsel.

---

[9]*State v. Woodard*, 03-847, p.4 (La.App. 4 Cir. 4/30/03), 847 So.2d 629, 632.

[10]*Dabney*, 842 So.2d 326.

[11]La.Code Crim.P. art. 841.  *Smith,* 793 So.2d 1199.

[12]*State v. McIntyre*, 381 So.2d 408 (La.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209 (1980).

[13]*State v. Schexnaider,* 03-144, pp.  17-18 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 462 (citations omitted).

In order to prevail on an ineffective assistance of counsel claim, Howard must demonstrate both a deficient performance and prejudice as a result of the performance. This court has explained the test for ineffective assistance of counsel:

> A defendant is entitled to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. This right is fundamental to our system of justice and a cornerstone in assuring that defendants receive a fair trial not unduly prejudiced by their counsel's ineffective assistance. . . .The claim is assessed by the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Id.* To prevail, the defendant must not only show that counsel's performance was deficient, but also that a reasonable probability existed that he was prejudiced by the deficiency. *Brooks,* 661 So.2d 1333. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.[14]

As noted above, the trial court found two out-of-court statements, Detective Whitstine made that defense counsel objected to at trial as hearsay, not to be hearsay statements pursuant to La.Code Evid. 801(D)(4) and 801(D)(3)(b). We have already found no error in these rulings. These two statements, along with physical evidence and the remaining witnesses' testimonies, established that Howard was in the business of selling drugs and that he conspired with Kicker Jones to promote that business. Why defense counsel chose not to object to the remaining two out-of-court statements attributed to Howard would be speculative. However, under the facts of this case, Howard cannot show that failure to object to the two remaining statements most likely resulted in a conviction. Moreover, "'[e]ffective counsel' has been defined to mean 'not errorless counsel,' and not counsel judged ineffective by hindsight, but counsel likely to render reasonably effective assistance."[15]

Therefore, for all the above reasons, this assignment of error is without merit.

**EXCESSIVE SENTENCE**

---

[14]*State v. Antoine,* 00-564, p. 6 (La.App. 3 Cir. 12/6/00), 774 So.2d 353, 357.

[15]*Id.*

Howard alleges his mandatory life sentence at hard labor is excessive under the circumstances of his case. He was sentenced on November 5, 2003, pursuant to La.R.S. 15:529.1(A)(2)(b)(ii), which, at the time of the underlying offense, in pertinent part, provided:

> If the third felony or the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five, or any other crimes punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

In addition to the current conviction, the State proved that Howard was also convicted of aggravated battery, a designated crime of violence, in July 1992 and possession of cocaine with intent to distribute, punishable by more than five years imprisonment, in June 1993. The underlying offense, conspiracy to distribute cocaine is punishable by imprisonment of no less than five years, nor more than thirty years.[16]

Citing *State v. Dorthey*,[17] in which the supreme court held that even though a sentence under the Habitual Offender Law was the minimum the statute provided, the sentence may still be constitutionally excessive, Howard argues:

> If Howard is guilty, he is guilty only of conspiring to sell two rocks of cocaine to undercover officers, who sought him out and initiated the sale. Such conduct, though criminal, is plainly at the light end of the seriousness spectrum of distribution and possession offenses. Likewise, although he qualifies for a life sentence based on having two prior convictions, those convictions occurred within several months of each other, eight years before the instant offense. Howard's criminal history does not depict an incurable recidivist who poses a serious danger to society, and his offensive conduct does not warrant his permanent removal from free society.

---

[16]La.R.S. 40:967(B)(1).

[17]623 So.2d 1276 (La.1993).

9

Trial courts have authority to deviate from a mandatory minimum sentence, which the Habitual Offender Law proscribes; however, the trial court must be clearly and firmly convinced that the minimum sentence is excessive under the circumstances of the case.[18]

In *State v. Johnson*,[19] our supreme court held:

> A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.
>
> . . . .
>
> To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
>
> > [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
>
> When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the law of our state. He is subjected to a longer sentence because he continues to break the law.

To support his position, Howard cites *State v. Combs*,[20] in which Combs was sentenced to life imprisonment as a third felony offender under La.R.S. 15:529.1, and

---

[18]*State v. Johnson,* 97-1906 (La. 3/4/98), 709 So.2d 672.

[19]*Id* at 676-77.

[20]02-1920 (La.App. 4 Cir. 5/21/03), 848 So.2d 672.

the fifth circuit found his sentence to be excessive given the circumstances of his case. The underlying offense, committed in 1999, was for possession of a small amount of cocaine with intent to distribute. The predicate offenses were for forgery in 1986 and possession of cocaine in 1996. Combs, who was thirty-two, presented testimony from his family regarding his addiction to cocaine. They testified as to his steady employment to support his family despite his addiction. The fifth circuit noted that none of his offenses were violent offenses and concluded that the life sentence imposed was not proportionate to the crimes for which he was convicted. The court further remarked that, because of a change in the Habitual Offender Law following his conviction but before his sentencing, Combs would not have qualified for a life term under the current law.

In the instant case, Howard was found to be a habitual offender on November 5, 2003, the same day he was sentenced to fifteen years at hard labor on the conviction for conspiracy to distribute controlled dangerous substances. At the time the trial court imposed the fifteen-year sentence, it reviewed Howard's pre-sentence investigation report and noted Howard's extensive prior criminal history which started in 1987 and included arrests for aggravated battery, aggravated rape, simple burglary, simple assault, criminal damage to property, and culminating with the convictions for aggravated battery and distribution of drugs in 1992 and 1993, respectively. These latter convictions resulted in imprisonment with the Department of Corrections. At the time of Howard's sentencing on the underlying conviction, he did not introduce any mitigating evidence which could have supported a reduction of the term of imprisonment imposed.

Immediately following his sentencing on the conspiracy conviction, he was found to be a habitual offender and his fifteen-year sentence was vacated. During the habitual offender hearing, it was revealed that, at the time of the underlying offense, he was on parole, having been out of prison a little more than four years. Again, prior to sentencing, he presented no evidence which could have convinced the trial court he was exceptional in that, because of unusual circumstances, he was a victim of the legislature's failure to assign sentences that were meaningfully tailored to his culpability, the gravity of his offense, and the circumstances of his case. As noted, while the Defendant orally objected to the sentence as being excessive, he failed to file

a written motion assigning specific grounds why the sentence would be excessive in his case.

Accordingly, he failed to rebut the presumption that the mandatory sentence of life imprisonment is not constitutionally excessive. Thus, this assignment is without merit.

## CONCLUSION

We affirm Howard's conviction for conspiracy to distribute a controlled dangerous substance and the life sentence imposed on him pursuant to the Habitual Offender Law.

**CONVICTION AND SENTENCE AFFIRMED.**