hBOWES, Judge.
Defendant was convicted on one count of second degree murder (of Shawn Brown) and he was sentenced to the mandatory term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, with credit for time served. Defendant now appeals. We affirm the defendant’s conviction and sentence.

FACTS

The facts adduced at trial reflect that, in the early hours of January 5,1994, the defendant and two co-perpetrators (Ronnie and Melvin Davis) entered the home of Doris Robinson, at 1348 Myrtle Street in Metairie. Doris’ sister, Linda Robinson, was at the residence with Doris’ twelve-year joldg daughter, Cynthia; a cousin, John Hawkins; a fifteen-year-old nephew, Shawn Brown; and a family friend, Roy Johnson. Both Johnson and • Robinson testified that defendant appeared to be the leader of the group.
Defendant forced Cynthia into a back room and demanded that she show him where any *1043 money, guns or drugs were hidden. The other two men held guns on the other occupants of the house. Ms. Robinson testified that she and the other victims handed over money, jewelry, and “crack” cocaine. Defendant returned to the front of the house, collected the victims’ property, and exited through the front door. Ms. Robinson further testified that Melvin and Ronnie Davis began firing at her, and at the male occupants of the house. Johnson and Hawkins both testified that all of the perpetrators fired their weapons.
Ms. Robinson stated Melvin Davis shot her repeatedly, inflicting twenty-two gunshot wounds. The fetus Ms. Robinson was carrying died as a result of bullet wounds. • Johnson was shot in the hand before he fled the house. Hawkins was also wounded as he ran from the room, and he hid underneath the house until police arrived. Brown received gunshot wounds to the head, and died later that day at Ochsner Hospital.

RELEVANT PROCEDURAL HISTORY

Defendant, Shedriek Givens, and co-defendants, Melvin and Ronnie Davis, were charged by an amended six count indictment. Count One of the indictment charged the second degree murder of Shawn Brown.
|30n December 12, 1995, a jury trial commenced as to Shedriek Givens alone and as to only count one of the indictment, namely the second degree murder of Shawn Brown. Due to an improper comment by defense counsel, Mark Nolting, during voir dire, the trial judge dismissed the prospective jurors and continued the trial. On January 16, 1996, trial again commenced on Count One as to Shedriek Givens only. On January 24, the sixth day of trial, defendant, through Indigent Defender Board attorney Carol Kiff, expressed his concern that interaction between the trial judge and defense counsel during the course of the trial had prejudiced the jury. Through his appointed attorney, Ms. Kiff, defendant moved for a mistrial. The trial court granted defendant’s motion over the state’s objection.
Trial was had on June 25-28, 1996, and, at its conclusion, the jury returned a verdict of guilty as charged of second degree murder.
On appeal, defendant alleges that the trial court’s declaration of a mistrial in the appellant’s previous trial of January 24, 1996 was improper and, therefore, his current conviction, obtained in his June 1996 retrial, is barred by double jeopardy.

ISSUE ON APPEAL

The Fifth Amendment to the United States Constitution and Article I, § 15 of the Louisiana Constitution of 1974 prohibits placing a person twice in jeopardy for the same offense. Further, La.C.Cr.P. art. 591 provides:
No person shall be twice put in jeopardy-of life or liberty for the same offense, except, when on his own | potion, a new trial, has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
La.C.Cr.P. art. 775 sets forth the circumstances under which a mistrial may be granted, and further provides that:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
******
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
See State v. Smith, 430 So.2d 31 (La.1983).
Defendant argues that the trial court declared a mistrial on the basis of defense counsel Mark Nolting’s performance, when he (defendant) did not raise such a claim. Defendant contends that he was manipulated by the trial court, and that the judge acted sua sponte in ordering the mistrial.
Generally, where the trial court declares a mistrial without the defendant’s consent, and where the mistrial is not based on *1044 one of the grounds listed in art. 775, supra, any further prosecution of that defendant for the same criminal conduct is barred by double jeopardy. State v. Joseph, 434 So.2d 1057 (La.1983). The record in this case clearly shows, however, that 1 sdefendant freely and knowingly requested a mistrial, and that the court properly granted the mistrial under the provisions of art. 775, supra.
The record reflects that the trial at issue proceeded for six days before the granting of a mistrial. During the course of the proceedings, defense counsel Mark Nolt-ing appears to have severely tried the judge’s patience by performing extensive and often repetitive cross-examination of state’s witnesses. Comments and admonitions by the judge were, for the most part, confined to bench conferences out of the jury’s hearing. However, some of the judge’s comments were made in the jury’s presence.
On January 24, 1996, the fifth day of testimony in the case, defense counsel was to continue what had already become a time-consuming cross-examination of Detective Philip Ramon. During a bench conference out of the jury’s presence, the trial judge stated to defense counsel:
In fact, let me tell you something else about this case, Mr. Nolting, you’ve about reached your limit with me. You’ve kept this jury here; we’re into the second week with this rambling, pointless repetitive questioning of yours on cross examination, and with nonsense like this, arguments that you’re making like this. I’m not going to put up with this much longer.
This jury is so outraged at your performance that they’re laughing at you, audibly, in the courtroom. And when you ask these same questions over and over and over again, they’re sighing and groaning because they’ve heard it so many times.
Now, you’re not going to continue to do that, I’m going to tell you that.
16... If you do that, in spite of the fact that I’m telling you not to, we’re going to recess this trial, and we’re going to deal with your behavior, and not your client’s. Do you understand?
While still out of the jury’s presence, Mr. Nolting moved for a mistrial. The trial judge denied counsel’s motion, stating, “You are not going to continue your cross examination the way you’ve been doing it, and you’re not going to impose on this jury and this court the way you’re inclined to do.” Defendant, through Mr. Nolting, expressed his wish to make a statement regarding the behavior of the judge and jurors during the course of the trial. The following colloquy ensued:
MR. GIVENS (Defendant):
Oh, [the jury] was just laughing, and jokes. You know, I’m facing a second degree murder charge, a life charge, and they’re making a joke out of it.
MR. NOLTING:
Who is?
MR. GIVENS:
Everybody, they’re just laughing in the courtroom.
MR. NOLTING:
Well, do you see the Judge doing any of that?
•f* $ »!• 5¡5 5¡í
MR. GIVENS:
Yeah. I said everybody laughing in court, making this a joke, and this is a second degree murder, and I’m facing a life charge.
JtTHE COURT:
Do you understand that’s exactly what I’m telling your lawyer?
MR. GIVENS:
Yeah, I know what you said.
THE COURT:
This is not funny, it should not be going on like this.
MR. NOLTING:
Am I doing — am I doing this?
MR. GIVENS:
Well, no, but everybody laughing at the questions you keep asking.
MR. NOLTING:
Which ones are those?
MR. GIVENS:
The jury, everybody in the courtroom.
*1045 At the behest of the judge and Mr. Nolt-ing, Indigent Defender Board attorney Carol EM conferred with defendant. Out of the jury’s presence, Ms. Kiff stated that defendant “is concerned about the way the jury is perceiving this trial. He’s also concerned about the Judge’s reactions to Mark. He says that the Judge has said, a couple of times, when Mark asked a question, that it was nonsense. He says it’s his perception that there is. — that Mark — there’s something going on with Mark and the Judge; that’s just his perception.”
|8The judge expressed to Ms. Kiff his concern that the jury had been audibly laughing and groaning in response to Mr. Nolting’s repetitive questioning. The judge stated that “there is a relationship brewing between Mark and myself, because he will not stop doing that, and it’s jeopardizing the trial; we’re in the second week of a trial that should have been over long ago ...” After conferring further with defendant, Ms. Kiff informed the court that defendant wished to move for a mistrial on the grounds that “he’s not comfortable with the perceptions going on in this court between the jury, the Judge, and the attorney.” The state objected to a mistrial, and requested that the court instead admonish the jury. Ms. Kiff responded, “Speaking on behalf of Shedrick, and whether he wants to continue with this trial or not, I think you’re asking the bell to be unrung, and I don’t think it can be done at this point.”
After the court heard the arguments of counsel, Ms. Kiff asked defendant on the record whether it was his wish to move for a mistrial. Defendant twice responded that this was his wish. Shortly thereafter, the judge declared a mistrial.
Defendant’s statements to the trial judge clearly show that he perceived the jury to have been affected by the actions of the judge and defense counsel during the trial, and that he felt that the conduct of the judge and Mr. Nolting made it impossible for him to receive a fair trial. It is also clear that defendant voluntarily requested that a mistrial be granted.
| ¡/‘A defendant’s motion for a mistrial constitutes a ‘deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.’ ” State v. Johnson, 95-2626, p. 3 (La. App. 4 Cir. 11/27/96), 684 So.2d 554, 556, quoting United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978).
Despite the fact that it was the defendant himself who requested a mistrial, he now complains that there was not a sufficient basis for a mistrial,' and that the trial court could have cured any prejudice he might have suffered with an admonition to the jury. In support of his argument, deferidant cites the opinion in State v. Coffil, 377 So.2d 106, 109, (La.1979), in which the Louisiana Supreme Court held that “[a] claim of bias, prejudice or other inability to grant the parties a' fair trial must be based upon substantial evidence to sustain such a conclusion.” Defendant argues there was no substantial evidence in his case. We find that the record, without question, reflects otherwise and shows that that defendant was entitled to his requested mistrial under the provisions of Article 775.
Accordingly, we find that defendant’s second trial did not subject him to double jeopardy and, therefore, the state was free to try defendant again under the exception in La. C.Cr.P. art. 591, supra. This assignment of error is completely lacking in merit.

hoERRORS PATENT REVIEW

We have reviewed the record in this ease for errors patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and we find the following error.
The trial court failed to advise defendant of the three-year time limit for the filing of an application for post conviction relief as mandated by La.C.Cr.P. art. 930.8. It is, therefore, ordered that this case be remanded and that the trial court send written notice to defendant within ten days of the rendering this Court’s opinion, and then file written proof in the record that defendant received such notice. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289.

*1046
CONCLUSION

For the above discussed reasons, the defendant’s conviction and sentence are affirmed and the case is remanded to allow the trial court to send notice to defendant of the delays for filing for post-conviction relief.
AFFIRMED.