# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 23-777

**STATE OF LOUISIANA**

**VERSUS**

**LEE R. JACKSON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-K-3457-A
HONORABLE GREGORY JAMES DOUCET, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**LEDRICKA J. THIERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jonathan W. Perry, Ledricka J. Thierry and Guy E. Bradberry, Judges.

**AFFIRMED.**

**Annette Roach**
**Louisiana Appellate Project**
**P.O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT-APPELLANT**
    **Lee R. Jackson**

**Chad Pitre**
**District Attorney, Parish of St. Landry**
**Kathleen E. Ryan**
**Assistant District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**THIERRY, Judge.**

The Defendant, Lee R. Jackson, appeals his convictions on one count of first degree rape and on two counts of molestation of a juvenile. For the following reasons, we affirm Defendant's convictions.

## FACTS AND PROCEDURAL HISTORY

From 2016 through 2018, Defendant lived with C.L. and two of her children Ky.L, who was eleven years old in 2018, and Kh.L. They first lived in Defendant's trailer for about a year before moving into C.L.'s home. In July 2018, a neighbor contacted the Department of Children and Family Services who then called the St. Landry Parish Sheriff's Office. The ensuing investigation concluded that Ky.L. had reported being touched by Defendant, with his penis penetrating her vagina. Ky.L. also stated that she was forced to watch Defendant masturbate.

On October 29, 2018, Defendant was charged by grand jury indictment with first degree rape of a child under thirteen, a violation of La.R.S. 14:42(A)(4), and two counts of molestation of a juvenile under thirteen, violations of La.R.S. 14:81.2. On January 14, 2020, a jury of twelve persons and two alternates was selected and sworn in. When the jury returned on January 21, 2020, Defendant's counsel orally moved to withdraw due to a conflict of interest. The trial court granted the motion to withdraw and appointed Kenneth Willis to represent Defendant. The court reset jury selection for May 13, 2020, and reset trial for May 13, 14, and 15, 2020. Thereafter, on February 11, 2020, the trial court granted Mr. Willis' motion to withdraw, and on February 19, 2020, allowed Edward James Lopez to enroll as defense counsel.

On September 12, 2023, the trial court heard a "Motion for Clarification" filed by the State. The trial court granted the State's motion and declared that a mistrial

had been granted on January 21, 2020. The following day, September 13, 2023, a jury of twelve persons was selected. On September 27, 2023, trial began, with Defendant being represented by Jordan Precht. Before the first witness testified, the State moved to amend the date ranges alleged in the grand jury indictment. The trial court allowed the amendment over Defendant's objection. After a two-day trial, a unanimous jury found Defendant guilty as charged on all three counts.

On October 18, 2023, the trial court sentenced Defendant on the count of first degree rape to life imprisonment without benefit of parole, probation, or suspension of sentence and on the two counts of molestation of a juvenile to thirty-five years at hard labor on each count, with the first twenty-five years on each count to be served without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently with each other. Defendant filed a motion for appeal, and Defendant is now before this court alleging two assignments of error—one involving the trial court's clarification that Defendant's first trial ended in a mistrial and the other alleging Defendant's second trial violated double jeopardy. For the reasons that follow, we find these assignments of error lack merit.

**ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO**

Defendant argues these two assignments of error together. Thus, we will address them together. Defendant argues the trial court erred in retroactively deciding that his first trial ended in a mistrial. He further argues that since the first trial did not end by a legally declared mistrial, the second trial violated his protection against double jeopardy.

*Defense Counsel's Motion to Withdraw*

On January 21, 2020, Defendant's first trial resumed for the taking of evidence. The jury had been selected and sworn in the week prior. At the beginning

2

of the day, defense counsel orally moved to withdraw from the case due to a conflict of interest involving one of the witnesses to be called by the State. The following colloquy occurred:

> MR. BIROTTE: At this time, Your Honor, Antonio Birotte, on behalf of Mr. Jackson, Your Honor. I'll make both an oral and I can file a written motion as well, to withdraw from this matter, Your Honor. After discussing with my client and going through the discovery submitted, I realized that the State intended to call a witness by the name of Mr. David Curtis who I had previously represented relative to a revocation proceeding on a criminal conviction. At that time, Mr. Curtis had disclosed details to me about that matter in an attempt to assist in his representation. That representation ended, I believe, in 2012, Your Honor. Additionally, I had a discussion with Mr. David Curtis pursuant to current pending charges relative to felony carnal knowledge of a juvenile, Your Honor, I think which Mr. Curtis disclosed information to me about the case and - -
>
> . . . .
>
> [A]bout the pending case that he's currently facing and he requested to retain me at that time. We discussed what my fees would be and whatnot and at this point, Your Honor, even today, Mr. Curtis expressed his intention to retain my office to represent him in the pending charges.
>
> Your Honor, out of an abundance of caution, I filed this Motion to Withdraw due to what I could see as an incurable conflict, Your Honor. I don't believe it would be proper for myself to continue in this matter given the contact and the substance of the contact that I've had with the State's potential witness, Your Honor.

The trial court then questioned Defendant as to whether he understood the motion filed by his counsel:

> THE COURT: Alright, Mr. Jackson, you've heard the motion that has been made by Mr. Birotte?
>
> MR. JACKSON: Yes, sir.
>
> THE COURT: You understand or have you talked to him about this and he's explained to you why he was filing this Motion?
>
> MR. JACKSON: Yes, sir.
>
> THE COURT: You understand that the conflict is is [sic] that this Mr. Curtis who is a witness for the State, he would have to be cross-

examined by Mr. Birotte and Mr. Birotte has previously represented him and may be representing him on present charges? You understand that?

> MR. JACKSON: Yes, sir.

> THE COURT: Even though this matter could be resolved by the fact that you could waive any conflict of interest but Mr. Curtis would also have to waive conflict of interest, it still doesn't change the facts that it puts Mr. Birotte, as an attorney, in a compromising position having to cross-examine a possible client in connection with your case. You understand that?

Defendant further stated he understood that if Mr. Birotte withdrew from the case, trial would not proceed that day. When asked if he had any comments, Defendant stated, "All I say is I would rather him keep defending me since he been [sic] here since the beginning." The trial court responded that it would appoint Mr. Kenneth Willis, an experienced criminal lawyer in St. Landry Parish, to represent Defendant.

When the trial court asked the State if it had anything to put on the record, the State responded: "No, I mean, I think the fact that Mr. Birotte has knowledge of a pending charge from his conversation would make it impossible for him to cross-examine the witness." The trial court then stated:

> Based upon the Motion that has been made, based upon the conflict that exists, the Court doesn't see how this matter can proceed to trial today. Therefore, the Court is going to allow Mr. Birotte to withdraw. The Court is going to appoint Kenneth Willis to represent Mr. Jackson.

The trial court then reset trial for a future date and released the jury. Shortly thereafter, the trial court granted Mr. Willis' motion to withdraw, and on February 19, 2020, allowed Edward James Lopez to enroll as defense counsel. Trial was then pushed back even further.

*Hearing on State's Motion for Clarification*

4

On September 12, 2023, defense counsel waived Defendant's presence at a hearing held on a Motion for Clarification filed by the State. The State explained that according to the minutes of January 21, 2020, Mr. Birotte moved to withdraw, and the trial court granted the motion to withdraw. The purpose of the Motion for Clarification, the State asserted, was to "fill in the gaps . . . of what was the mechanism by which the jury was dismissed that day[.]" The State introduced the testimony of Judge James Doherty, Jr., the judge who presided over the first trial on January 21, 2020. The following colloquy took place between the State and Judge Doherty:

> Q. Have you had the opportunity to review of [sic] the minutes of January 14th and the 21st?
>
> A. I have.
>
> Q. What is your appreciation of what happened in court on those days?
>
> A. My recollection is I was advised by, I believe, Mr. Birotte, who was appointed counsel for Mr. Jackson, that there was an issue and we had an in-chambers conference with Mr. Birotte and Mr. Richard and it was at that time I was notified that Mr. Birotte wished to withdraw as counsel for Mr. Jackson because he had an alleged conflict.
>
> Q. Okay, and this was after the jury was picked?
>
> A. This was on the 21st, on the day of the trial. My recollection is I was upset for the fact that it was only brought to my attention on the day that we were to begin taking evidence in that case.
>
> Q. Okay, so the defense counsel moved to withdraw. Did the Court grant that Motion?
>
> A. It did. My recollection is that we had a discussion and then we went into court on the record. Mr. Birotte, as counsel, made a Motion to Withdraw. There were some questions asked of Mr. Jackson by me as to his understanding of what was going on, if he had discussed it with Mr. Birotte, things like that.
>
> Q. Okay, and was the jury present?

A.     Not when that occurred. That conversation or that colloquy took place in open court with the defendant and counsel, both the defense counsel and the ADA who, I believe, was Donald Richard.

Q.     And after that Motion was denied - - after the Motion to Withdraw was granted, was the jury brought in at some point after?

A.     They were.

Q.     Okay, what happened with the jury?

A.     I dismissed the jury. I don't believe I told them the reason other than there were some issues that had arisen and that they would not have to - - they could feel relieved because they didn't have to make a decision in an important case.

Q.     Okay, and so based on your review and your recollection, does the record reflect that a mistrial was ordered?

A.     The word "mistrial" was not used according to the transcript that was provided to me; however, it was clear that it was the intention of the Court to declare a mistrial. I felt that there was a basis for it under the Criminal Code, Louisiana Criminal Code, concerning defects, legal defects, that if the case had gone to trial probably would have constituted a reversible error as well as the fact that the Motion - - even though the Motion was made by defense counsel, it was my appreciation that the District Attorney's Office acquiesced in the termination or the mistrial of the case at that time and the release of the jury.

Q.     So based on the circumstances as you described being unable to proceed with the trial without a defense lawyer, you would have viewed those circumstances as necessary for an order of mistrial?

A.     Yes, the basis that I recall is Mr. Birotte disclosed to the Court that morning that he had a conflict that he did not realize that the prosecuting witness was a former client whom he was engaged with at that time concerning a representation on another pending matter and it was just untenable, in the Court's opinion, for Mr. Birotte to have to cross-examine a former and prospective client that he had talked to about representing and I believe that was also the position of the District Attorney's Office.

Q.     Is there any other reason why you would have dismissed the jury that day if not for and [sic] order a mistrial?

A.     Not stated but my impression - - my problem - - I had an additional problem. My problem was a defense counsel not knowing before the selection of the jury who the witnesses were and I was

concerned that there may be a grounds for a claim of ineffectiveness of counsel at a later date.

Q. And so, I guess considering all of these circumstances, not just the Motion to Withdraw but your concern for ineffectiveness of counsel, in your best estimation, did the Court intend to declare a mistrial that date on January 21st?

A. Yes, absolutely. I think a mistrial was declared defacto based upon the facts that were presented to me and the fact that I released the jury.

Q. And you may have addressed this already but just briefly again, the minutes don't reflect that a mistrial was moved for or ordered. How would you characterize the absence of the word "mistrial" in the record?

A. An oversight.

Finally, the following colloquy took place on redirect examination:

Q. Judge, did either side, State or defense, move for a mistrial to your recollection?

A. To my recollection, I can't recall.

Q. Okay, and is it fair to say that you would have granted a mistrial regardless of whether one side or the other side had moved for it so, in other words, would this mistrial have been - - would the circumstances have been good grounds for a mistrial on the Court's own motion?

A. In my opinion, it was a defective - - there was a problem with the procedure in going forward with this case and that is having an attorney having to cross-examine a client, a present and former client.

The trial judge presiding over the clarification hearing stated the following

regarding the State's Motion for Clarification:

After hearing the testimony of Judge Doherty, the presiding Judge in that matter back on January 21st of 2020, based on the testimony and also in conjunction with the minute entry here, it was understood that this trial ended in a mistrial back in 2020 but as Judge Doherty stated, it was just an oversight that the word "mistrial" was not put in the minutes. The Court is going to grant or declare that the mistrial was granted back in 2020 based on legal defects in the proceedings and among other issues the Judge cited and the Court is going to instruct the Clerk of Court to make a minute entry accordingly.

7

*Pertinent Statutory Law*

Louisiana Code of Criminal Procedure Article 591 provides:

> No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of article 775 or ordered with the express consent of the defendant.

Louisiana Code of Criminal Procedure Article 592 states the following regarding when double jeopardy begins:

> When a defendant pleads not guilty and is tried by jury, jeopardy begins when the jury panel is sworn pursuant to Article 790. When a defendant pleads not guilty, and is tried without a jury, jeopardy begins when the first witness is sworn at the trial on the merits. When a defendant pleads guilty, jeopardy begins when a valid sentence is imposed.

Louisiana Code of Criminal Procedure Article 775 sets forth the requirements for a legally ordered mistrial:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> (1) The defendant consents thereto;
>
> (2) The jury is unable to agree upon a verdict;
>
> (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
>
> (4) The court finds that the defendant does not have the mental capacity to proceed;
>
> (5) It is physically impossible to proceed with the trial in conformity with the law; or
>
> (6) False statements of a juror on voir dire prevent a fair trial.
>
> Upon motion of the defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.

In *State v. Dickerson*, 99-647, pp. 5–6 (La.App. 5 Cir. 4/25/00), 760 So.2d 503, 506, *writ denied*, 00-1495 (La. 3/16/01), 787 So.2d 299, the fifth circuit discussed the correlation between the above articles:

> [Louisiana Code of Civil Procedure Article] 591 provides that there is no double jeopardy bar to a second trial "where there has been a mistrial legally ordered under the provisions of Article 775, or ordered with the express consent of the defendant." Generally, where the trial court declares a mistrial without the defendant's consent, and where the mistrial is not based on one of the grounds listed in article 775, the action is considered an illegal dismissal, and any further prosecution of that defendant for the same criminal conduct is barred by double jeopardy. *State v. Joseph,* 434 So.2d 1057 (La.1983); *State v. Simpson,* 371 So.2d 733 (La.1979); *State v. Givens,* 97–17 (La.App. 5 Cir. 10/15/97), 701 So.2d 1042, *writ denied,* 97–2893 (La.3/27/98), 716 So.2d 884.

*Defendant's Argument in Brief*

Defendant contends that neither party requested a mistrial of the first trial and that no inquiry was made as to possible alternatives to a mistrial. Thus, Defendant asserts the trial judge presiding over the clarification hearing had no authority to retroactively grant a mistrial of the first trial.[1] As for one alternative to a mistrial, Defendant contends the trial judge could have recessed trial, which would have allowed new counsel time to prepare for trial. Defendant asserts that "[b]y dismissing the already sworn jury without granting a mistrial, the effect resulted in an illegal dismissal." Defendant further asserts that he was "entitled to have the jury that had already been selected and sworn hear the case."

---

[1] We note the trial judge presiding over the clarification hearing did not "retroactively" grant a mistrial as Defendant argues. Rather, the trial judge "declare[d] that a mistrial was granted back in 2020. . . ."

Defendant cites *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033 (1963), a case in which the jury was discharged after it was sworn because one of the state's key witnesses was not present. The witness had not been served with a summons, and no other arrangements had been made to assure his presence. When the case was called to trial two days later in front of a new jury, Downum entered a plea of double jeopardy. Downum's plea was overruled, and he was found guilty. The United States Supreme Court, however, found double jeopardy had attached and reversed the judgment below. The Supreme Court found that "when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance." *Id.* at 1035. The Supreme Court found the "situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict." *Id.*

Likening *Downum* to the present case, Defendant asserts in brief:

> In the present case the Motion to Withdraw was filed because defense counsel had just realized the State's intent to call his former client as a witness at trial – presumably testifying as a "jailhouse snitch." The record does not indicate as to when the State had decided the inmate was a potential witness or when the defense was advised of the potential witness. At the hearing held in September 2023, the judge even commented about its concern as to why the defense had not known about the witness earlier. At the proceedings held in January 21, 2020, Lee Jackson advised the court that he desired to proceed to trial with the conflict of counsel. However, without further inquiry, the judge granted the Motion to Withdraw and dismissed the jury.

> The State could have prevented the end result by either providing timely notice to the defense of its potential witness (if late notice of the witness was given to the defense) or chosen to not call this individual as a witness at trial. Defense counsel would have either had a conflict or could have sought to withdraw before the jury had been empaneled. Importantly, the State could have requested that a mistrial be declared and addressed double jeopardy after the motion was granted and before the court chose to release the jury. The record does not indicate that the court considered alternatives to dismissal of the jury, such as recessing the case for a sufficient time to allow new counsel to prepare for trial. In fact, after the motion was granted, the court gave strict instructions

to current counsel and to newly appointed counsel and ordered that the case be set on the court's May trial docket as a first fixing.

Defendant contends that when his counsel filed the Motion to Withdraw, the trial court should have recessed the trial in accordance with La.Code Crim.P. art. 708. "A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has been commenced." La.Code Crim.P. art. 708 (in pertinent part). Defendant argues that if new counsel believed there was insufficient time for trial preparation, the new counsel could have sought an extension of the recess or moved for a mistrial at that point. Defendant cites *State v. Antoine*, 00-564 (La.App. 3 Cir. 12/6/00), 774 So.2d 353, a case that was recessed by the trial court for two months due to the sudden illness of defense counsel. On appeal, this court reversed Antoine's conviction and remanded for a new trial, concluding that it could not find, with confidence, that Defendant was not prejudiced by his counsel's sudden illness. *See also State v. Galan*, 18-1481 (La.App. 1 Cir. 5/14/19), 277 So.3d 365, *writ denied*, 19-1027 (La. 1/22/20), 291 So.3d 1042, where the first circuit upheld the trial court's denial of a mistrial and grant of a recess to allow Galan time to review documents untimely disclosed by the state.

Defendant cites *United States v. Fisher*, 624 F.3d 713 (5th Cir. 2010), for the proposition that the trial court was required to carefully consider reasonable alternatives prior to granting a motion for mistrial. After the jury was empaneled in *Fisher*, the district court granted a two-day continuance to allow Fisher to review discovery that had been produced but mislabeled by the government. During the two-day continuance, the government sent the district court an email, explaining that the continuance created a scheduling problem with two of its witnesses. When trial re-convened after the two-day continuance, the district court noted that Fisher's co-

11

defendant had been displaying bizarre behavior. The trial court initially severed the co-defendant from Fisher's case so that the co-defendant could undergo a competency evaluation. Fisher emphasized his desire to proceed to trial, even foregoing his objection to the severance of the co-defendant. The government, however, continued to complain of scheduling issues with its witnesses. Without inquiring about the scheduling issues or exploring ways to reconcile the conflicts, the district court told Fisher that in order to move forward with the trial, he would have to enter into some stipulations. When Fisher declined to stipulate, the district court stated that it would grant a continuance and defer its decision on severing the co-defendant until after the co-defendant's competency evaluation. Fisher objected to the continuance, emphasizing that he was ready to proceed to trial immediately. The trial court overruled the objection and granted a continuance for seven months. Given the length of the continuance, however, "the court declared a mistrial *sua sponte*." *Id.* at 717.

When Fisher subsequently moved to dismiss the indictment on double jeopardy grounds, the government argued that Fisher impliedly consented to the mistrial by failing to sufficiently object. Finding Fisher had sufficiently objected, the Fifth Circuit determined that Fisher's re-prosecution was barred by double jeopardy:

> In short, the district court declared a mistrial because of the scheduling conflicts of the government's witnesses, and we agree with the Third Circuit that "[s]cheduling considerations . . . do not outweigh the Court's duty to protect the defendants' constitutional right to be required to stand trial only once and are, by themselves, insufficient to support the declaration of a mistrial." *United States v. Rivera*, 384 F.3d 49, 56 (3d Cir.2004) (citing *United States v. Jorn*, 400 U.S. 470, 479-80, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)). The district court's duty to protect Fisher's double-jeopardy right required it to carefully consider reasonable ways to resolve the scheduling conflicts, something our trial courts routinely do. Nothing in the record, however, shows that the

12

district court did so here. Thus, we hold that there was no manifest necessity.

Because Fisher did not impliedly consent to the mistrial and because the district court did not carefully consider reasonable alternatives to a mistrial, we REVERSE the denial of Fisher's motion to dismiss the indictment and we render a judgment of dismissal.

*Id.* at 723–24 (alteration in original) (footnote omitted).

Finally, defense counsel argues the following in his brief to this court:

In the present case the court did not order a mistrial; instead, the court dismissed the jury after granting counsel's Motion to Withdraw, contrary to Jackson's request to keep counsel. In *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), the trial court excluded the primary defense counsel for misbehavior but gave the defendant the choice of either a recess, a mistrial, or to proceed to trial with second counsel. Once the defendant agreed to the mistrial, the court found that this barred a claim of double jeopardy. *Dinitz* found that "the important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed …" *Id.* at 609. In the present case, Jackson requested to continue with conflicted counsel and did not consent to a mistrial (even though he was never asked if he wished to do so). The record does not show that the court ever considered recessing the case which was a viable alternative to a mistrial.

The 2020 court failed to actually declare a mistrial before the jury was released and it also failed to explore alternatives, such as a recess. Likewise, the court erred in 2023, by declaring a mistrial retroactive to January 21, 2020. These actions by the tribunals violated Jackson's constitutional guarantee against double jeopardy as granted by the Fifth Amendment's Double Jeopardy Clause and La. Const. art. I, § 15.

*State's Argument in Brief*

The State contends that the transcript of defense counsel's motion to withdraw, in combination with Judge Doherty's testimony at the State's motion for clarification hearing, "clearly indicates that it was the intention and understanding of the Court and all parties that a mistrial was ordered and the jury was dismissed due [to] a legal defect in the proceedings – the defendant being unrepresented due to counsel's conflict and withdrawal." The State further argues that the mistrial was

granted under several of the grounds set forth in La.Code Crim.P. art. 775; thus, retrial of Defendant did not violate double jeopardy.

First, the State argues that defense counsel's withdrawal created a legal defect in the proceedings that made any verdict reversible as a matter of law. Citing Rule 1.7 of the Louisiana Rules of Professional Conduct, the State asserts that Defendant's original trial counsel faced a legitimate conflict that warranted his withdrawal from the case:

> Mr. Birotte could not have attacked Mr. Curtis's credibility with his prior conviction during Appellant's trial when he was the lawyer who represented Mr. Curtis in that matter. Further, the conflict did not meet the exceptions outlined in subsection (b) which would have allowed him to represent both clients. Mr. Birotte was clear in his statements made to the Court that he did not feel that he could provide competent and diligent representation to each affected client. Mr. Curtis intended to provide incriminating testimony at trial as evidence of Appellant's guilt. The conflict could not have been waived.

Since Mr. Birotte's withdrawal was "reasonable and necessary," the State contends Defendant was left without counsel before the taking of evidence at trial. Citing La.Const. Art. 1, § 13, the State asserts that Defendant's "right to effective assistance of counsel is a fundamental constitutional right and any violations of this right would certainly constitute a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law."

As for the trial court's failure to consider recessing the trial, the State contends there would have been several problems with a recess. First, the State argues that two of the subsequent attorneys appointed to represent Defendant withdrew because of conflicts, and then the courts closed due to COVID. Thus, it is not likely that Defendant's case could have resumed timely and would likely have ended in a mistrial regardless. Additionally, the State notes that Defendant faces a first degree rape charge and requires the assistance of indigent representation. Because of heavy

14

caseloads and frequent court appearances, the State contends the preparation of any indigent defender appointed to represent Defendant would have likely caused the jury to be on standby for an indefinite period of time. "In practicality," the State contends, "a recess was not a realistic, viable option."

The State also contends Defendant consented to and/or requested the mistrial. The State even suggests that it may have consented to the mistrial as well. Pursuant to La.Code Crim.P. art. 775, the State maintains the trial court has no discretion but to grant a mistrial when both the State and Defendant consent to the mistrial.[2] The State concludes its argument as follows:

> Appellant now speculates on all of the things the Court could have/should have/would have done, but that is not what is at issue here. The sole issue is whether the trial court abused its discretion in granting a mistrial, under La. C.Cr.P. art. 775. For the reasons stated herein, the mistrial was properly granted under La. C.Cr.P. art. 775 and jeopardy did not attach. Thus, Appellant's retrial did not violate Appellant's right against double jeopardy. Appellant's Allegations of Error 1 and 2 are without merit and respectfully, should be denied.

*Jurisprudence and Analysis*

Defendant concedes that double jeopardy was not raised in the trial court. However, double jeopardy may be raised at any time. La.Code Crim.P. art. 594 and *State v. Mace*, 17-220 (La.App. 3 Cir. 12/6/17), 258 So.3d 658, *writ denied*, 18-154 (La. 11/14/18), 256 So.3d 287. Consequently, we will address Defendant's double jeopardy claim.

There is no dispute that double jeopardy attached during Defendant's first trial; thus, the only question is whether that trial ended in a legal mistrial. La.Code

---

[2] We do note that La.Code Crim.P. art. 775 requires a mistrial be ordered when the state and the defendant "jointly move" for the mistrial. Although the record may support a finding that the State acquiesced in a mistrial, the record does not support a finding that the mistrial was a joint motion. At the clarification hearing, Judge Doherty stated that his understanding was that the State acquiesced in the mistrial and release of the jury.

Crim.P. arts. 591 and 592. The case of *State v. Bodley*, 394 So.2d 584 (La.1981) is similar to the present case and offers guidance. In *Bodley*, the defendant first became aware of an amended witness list during the prosecutor's opening statement. Although the trial court indicated it was inclined to grant a mistrial should Bodley request one, Bodley's counsel informed the court that Bodley did not want a mistrial. The trial court decided to grant a recess to allow Bodley's counsel to produce pertinent witnesses, but Bodley's counsel requested leave to withdraw as counsel. "Upon hearing the request, the trial judge then changed his mind and granted a mistrial sua sponte." *Id.* at 591. At Bodley's request, the trial court allowed defense counsel to continue to represent him. Bodley's counsel then filed a motion to quash based upon double jeopardy.

Bodley argued the trial court granted a mistrial not authorized by La.Code Crim.P. art. 775; thus, double jeopardy prohibited retrial for the same offense. The supreme court addressed Bodley's argument as follows:

> The record indicates that the state failed to comply with a court order by not revealing Mr. Justice's name to the defendant. The testimony to be given by the witness was highly prejudicial to the defense because it tended to narrow the class of persons who could have committed the crime to one of which defendant was a member. Through this witness, the state was prepared to attempt to show that only a person with the expertise possessed by the defendant could have dismembered the victim's legs in such a fashion. Counsel objected and complained that he relied on the witness list furnished to it by the state, was surprised by this testimony, and was not prepared to meet such prejudicial evidence on such short notice. For that reason, defense counsel declined to go forward with the case on the ground that to do so would be in violation of his professional duty to his client.

> We regard the refusal of counsel to go forward with the case as a reasonable course of action, when the drastic consequences of such testimony are considered, and do not understand why counsel should be bound by his client's wishes to proceed to trial under such adverse conditions and contrary to his best professional advice. Thus, we completely disregard counsel's deference to his client's wishes in a matter which the client was not competent to decide and which was

16

contrary to his professional judgment and advice. We likewise regard counsel's insistence and refusal to proceed with the trial and to be relieved as counsel if the trial judge did proceed over his objection as constituting trial conduct which we regard as an application to the court for a mistrial.

It cannot be denied that counsel's conduct successfully obtained a continuance of the trial after jeopardy attached to the defendant's advantage. Counsel was able to interview all of the out-of-state witnesses who were present in court, was given time to prepare for Mr. Justice's testimony, and given the further right to continue as defendant's counsel. As noted by the trial judge, counsel was not entitled to the best of both worlds, i. e., to rely on trial and error on the one hand if the trial proceeded and escape judgment on a technical objection that jeopardy attached because of his client's objection to delay the trial although not in his best interest.

We find that the defendant, through counsel, requested the mistrial, which was properly granted. Thus, C.Cr.P. art. 591 did not bar retrial. This assignment is without merit.

*Id.* at 593–94 (footnote omitted). *See also State v. Guillory*, 404 So.2d 453, 456 (La.1981), where the supreme court found the defendant's action "amounted to tacit consent and reason and cause for the mistrial."

As the court found in *Bodley*, we conclude that the trial court did not err in finding the motion to withdraw requested by the present Defendant's counsel was a reasonable request considering the conflict he faced. Furthermore, the motion to withdraw was properly considered a motion for mistrial. As the court concluded in *Bodley*, 394 So.2d at 593, we "regard counsel's insistence and refusal to proceed with the trial and to be relieved as counsel . . . as constituting trial conduct which we regard as an application to the court for a mistrial." *See also State v. Hedgspeth*, 42,921, p. 5 (La.App. 2 Cir. 1/9/08), 974 So.2d 150, 154 n.3, *writ denied,* 08-467 (La. 10/3/08), 992 So.2d 1008, where the second circuit stated:

It is well settled that whether the motion was improperly styled as one of continuance, recess or mistrial (essentially a motion to dismiss the jury), the court may examine the motion as though it had been properly denominated. *State v. Spears,* 39,302 (La.App.2d

17

Cir.09/27/06), 940 So.2d 135, *writ denied,* 2006–2704 (La.08/31/07), 962 So.2d 424.

Even though defense counsel did not call his motion to withdraw a motion for mistrial, it was essentially a motion to dismiss the jury and reschedule trial. There was nothing to indicate another attorney was prepared to resume the role as lead counsel and defense counsel did not object when the trial judge dismissed the jury. Therefore, it is reasonable to assume that defense counsel knew the motion to withdraw required a mistrial be declared.

Likewise, the trial court's dismissal of the jury because of defense counsel's motion to withdraw should be considered a grant of a mistrial even though the trial court did not specifically state such. Although Defendant asserts that he was deprived of his ability to object to a mistrial because a mistrial was not expressly moved for or granted, we find this argument duplicitous. As discussed above, defense counsel's motion to withdraw was essentially a motion for mistrial. Consequently, Defendant should not be allowed to claim he was unable to object to the ruling his counsel requested.

As for the trial court's failure to give reasons for the mistrial, *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824 (1978), offers guidance in this case. In *Arizona*, the trial judge granted the government's motion for mistrial due to improper and prejudicial comments made by defense counsel during his opening statement. The Supreme Court noted that in order to avoid the double jeopardy bar to a new trial, the government "must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.* at 830. The Supreme Court found that the trial judge did not expressly find there was a "manifest necessity" for the mistrial and did not expressly state that he had considered alternative solutions. *Id.*

18

at 828. After finding the government satisfied its burden of proving "manifest necessity[,]" the Court stated the following regarding the significance of the trial court's failure to make an explicit finding of "manifest necessity[:]"

> One final matter requires consideration. The absence of an explicit finding of "manifest necessity" appears to have been determinative for the District Court and may have been so for the Court of Appeals. If those courts regarded that omission as critical, they required too much. Since the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective.

> Review of any trial court decision, is of course, facilitated by findings and by an explanation of the reasons supporting the decision. No matter how desirable such procedural assistance may be, it is not constitutionally mandated in a case such as this. Cf. *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368. The basis for the trial judge's mistrial order is adequately disclosed by the record, which includes the extensive argument of counsel prior to the judge's ruling. The state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find "manifest necessity" in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion.

*Id.* at 836 (footnotes omitted).

Likewise, in the present case the basis for the mistrial ordered in the present case is adequately disclosed in the record. Judge Doherty testified at the clarification hearing that he dismissed the jury at the first trial because of defense counsel's motion to withdraw. Thus, the mistrial was properly granted under La.Code Crim.P. art. 775: "A mistrial may be ordered, and in a jury case the jury dismissed, when: (1) The defendant consents thereto[.]" Although Defendant stated that he would have liked his counsel to continue representing him, *Bodley*, 394 So.2d 584, declares that a defense counsel should not be forced to proceed to trial under such adverse conditions and against his professional opinion. As the court found in *Bodley*, defense counsel's refusal to go forward in the present case was reasonable and should be considered a motion for mistrial.

19

Grounds for a mistrial also existed under La.Code Crim.P. art. 775(3): "There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law[.]" The trial judge that presided over the State's clarification hearing found the first trial ended in a mistrial because of legal defects. Judge Doherty, the judge who presided over the first trial, testified that the mistrial was granted based on defense counsel's motion to withdraw and ineffective assistance of counsel concerns. In *Bodley*, 394 So.2d at 592, the supreme court stated that a person must have the right to the assistance of counsel to be validly convicted:

> Before a person may be validly convicted and punished by imprisonment, he must be accorded the right to the assistance of counsel. The purpose of this right is to insure that a defendant embroiled in our accusatory system of justice, probably untrained in law, can utilize every advantage which the law grants him. The intercession of an independent person trained in law in behalf of the accused serves to require the state to meet every procedural and substantive hurdle before a conviction can be obtained. His job is to cross examine the prosecution's witnesses so that the defendant receives the benefit of any inconsistencies or gaps in their testimony. Counsel is further charged, when possible, with going forward with whatever exculpatory evidence the defendant might be aware of or any other defense recognized by the law. All of this is best done by one with knowledge of what legal significance attaches to what witnesses state or fail to state.

The grant of defense counsel's motion to withdraw resulted in Defendant being without counsel, a legal defect that would have resulted in reversible error had trial continued. Considering the above, the record supports legal grounds for a mistrial even though the trial court did not specify grounds for a mistrial.

*Defendant's Claim that the State Caused the Mistrial*

Although Defendant implies his counsel's late discovery of the conflict may have been caused by the State's failure to timely disclose its witnesses, there is no evidence in the record to support this implication. Thus, unlike some of the cases

20

cited by Defendant in brief, there is no evidence that the State caused the mistrial in this case. In *Downum*, 372 U.S. 734, double jeopardy prevented retrial when the original jury was discharged due to the absence of one of the state's key witnesses. In *Fisher*, 624 F.3d 713, the state initially mislabeled discovery, which necessitated a two-day continuance, which led to scheduling conflicts for the state's witnesses, and which resulted in the trial court's declaration of a mistrial *sua sponte.* On the contrary, as Defendant acknowledges in brief, "The record does not indicate as to when the State had decided the inmate was a potential witness or when the defense was advised of the potential witness." Thus, the record does not support a finding that the State caused defense counsel's late discovery of the conflict and resulting mistrial.

*Defendant's Claims that Alternatives to a Mistrial Existed*

Defendant also suggests the State could have chosen not to call the witness with whom defense counsel had the conflict. This suggestion was not made below, thus the record does not contain sufficient information to evaluate whether this was a reasonable alternative to a mistrial.

Additionally, Defendant claims the trial court erred in failing to consider a recess as a viable alternative to dismissing the trial. Defendant cites two cases as examples of cases where a recess was granted in the trial court. In *State v. Antoine*, 774 So.2d 353, a two-month recess was taken due to the sudden illness of defense counsel. Opposite of the present Defendant, Antoine complained on appeal that a mistrial, rather than a recess, should have been granted. This court agreed with Antoine, finding that a mistrial should have been granted. This court stated the following concerning the recess:

> Further the highly unusual nature of the two-month recess between commencement of trial, and its resumption introduced the danger that the memory of each juror might have significantly faded. The trial court's later attempt to refresh the jurors' memories by allowing the State to recall Detective Hazelwood and to replay a video re-enactment of the crime might have caused them to give greater weight to the State's evidence than they would have on first impression.

*Id* at 358.

Defendant asserts the "memory fade" of jurors would not have been a concern in the present case since no witness had given testimony. Despite this distinction, we find *Antoine* does not support a grant of a recess in this case. If anything, *Antoine* lends support to the benefit of a mistrial over a recess.

In another case cited by Defendant, *Galan*, 277 So.3d 365, the first circuit upheld the trial court's denial of a mistrial and grant of a recess to allow Galan time to review documents untimely disclosed by the state. Galan moved for a mistrial in the trial court because of the state's late disclosure of various documents. Galan claimed he was prejudiced because his counsel was unable to use the documents to cross examine certain witnesses that had already been released. The trial court denied the motion for mistrial and recessed the trial for two days so that defense counsel could review the documents.

On appeal, Galan argued that a mistrial should have been granted because his counsel did not have time to prepare a defense or strategy based on the newly disclosed documents. On appeal, the court in *Galan* stated the following:

> We find the trial court did not abuse its discretion in denying the motion for mistrial. The trial court allowed defense counsel time to review the evidence, indicating it would recess the trial for months if necessary. Thereafter, the defendant had the opportunity to recall the state's witnesses and impeach their testimony with the new evidence. *See Andrews*, [19-68, (La. 1/14/19),] 260 So.3d 1202. Considering this, the defendant was not deprived of the opportunity to attempt to use the evidence. The defendant has not shown he was prejudiced by the trial court's election to handle the tardy disclosure of the evidence by an

22

alternative other than granting a mistrial. *See State v. Arnaud*, 412 So.2d 1013, 1017-18 (La. 1982) (finding the defendant was not prejudiced and there was no constitutional violation of his right to a fair trial where the trial court proceeded with trial despite the fact the state tardily provided the defense with a medical report).

*Id.* at 370 (footnote omitted).

Although *Galan* upheld the granting of a recess instead of a mistrial, in no way does it mandate that a recess should have been granted in the present case. Defendant's counsel moved to withdraw from the case without any mention of a recess. Thus, the possibility of a recess was never suggested to the trial court; and, even if suggested, would have been within the discretion of the trial court to grant or deny. "The decision to grant or deny a recess lies within the discretion of the trial court and will not be overturned absent an abuse of that discretion. *State v. Hampton,* 98–0331 (La.4/23/99), 750 So.2d 867, 877." *State v. Williams*, 07-1407, p. 30 (La. 10/20/09), 22 So.3d 867, 889, *cert. denied*, 560 U.S. 905, 130 S.Ct. 3278 (2010).

Additionally, the recess in *Galan* lasted two days; whereas any recess granted in the present case would have lasted a significantly longer period—at a minimum long enough for new counsel to prepare for trial. Furthermore, as the State points out in brief, Defendant's new counsel withdrew, requiring yet another counsel to prepare for trial. Additionally, Defendant's case would have likely been continued due to the COVID pandemic, making for an exceptionally long recess.

Finally, although La.Code Crim.P. art. 708 does not specify the permissible length of a recess, it appears that a relatively short period was intended. In *Antoine*, 774 So.2d at 358, this court described a two-month recess as "highly unusual." As noted previously, the court in *Antoine* stated that such a recess "introduced the danger that the memory of each juror might have significantly faded." *Id.* In *Johnson*, 529 So.2d at 472, the first circuit upheld the trial court's decision to recess

the trial but stated that it "by no means condone[d] the practice of granting fourteen day recesses[.]" Additionally, the Official Revision Comment of La.Code Crim.P. art. 708 states:

> (b) A recess that has prejudicial results because it is too long, or that is granted at a stage of the trial or under circumstances that are prejudicial, can be remedied by procedural devices. The defendant can move for a mistrial on the ground that the recess is prejudicial, or when the state makes an effort to recommence at the end of the recess, the defendant can object on the ground of double jeopardy.

Considering the above, even if the trial court in the present case had considered a recess as an option, it would have been within its sound discretion to reject it.

Accordingly, we find the trial court did not err in finding Defendant's first trial ended in a legal mistrial; thus, Defendant's second trial was not barred by double jeopardy. Defendant's assignments of error lack merit.

## DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**